**UNITED STATES, Appellee,**

v.

**Gerald Baptiste NORQUAY, Appellant.**

**UNITED STATES, Appellee,**

v.

**Ronald Keith SCHOENBORN, Appellant.**

**No. 92–1492, 92–2289.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 12, 1992.

Decided Feb. 8, 1993.

Andrew H. Mohring, Minneapolis, MN, argued, for appellant Norquay.

David Warg, Bloomington, MN, argued, for appellant Schoenborn.

Jeanne J. Graham, Asst. U.S. Atty., Minneapolis, MN, argued, for appellee.

Before McMILLIAN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and BENSON,* Senior District Judge.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

In June, 1991, Gerald Norquay and Ronald Schoenborn were indicted on two counts of aggravated sexual abuse (forcible rape). The indictment charged that they aided and abetted each other. At trial a few months later, each was convicted by a jury on both counts. Mr. Norquay was sentenced to 144 months of imprisonment, Mr. Schoenborn to 162 months of imprisonment. Each appeals both his conviction and his sentence.

As to their convictions, the defendants jointly appeal, first, the trial court's ruling that they had to make their peremptory strikes simultaneously with the government and, second, the trial court's refusal to give a specific jury instruction stating that a defendant's reasonable perception of consent by the alleged victim was a defense. In addition, Mr. Norquay appeals as to the sufficiency of the evidence on force; Mr. Schoenborn appeals the admission of certain evidence relating to the emotional condition and statements of the alleged victim and the trial court's decision to give a jury instruction that voluntary intoxication on Mr. Schoenborn's part was not a defense. As to their sentences, Mr. Norquay appeals the trial court's calculation of the

---

* The HONORABLE PAUL BENSON, Senior United States District Judge for the District of North Dakota, sitting by designation.

guideline range to be used; Mr. Schoenborn appeals the trial court's upward departure from the guidelines. We affirm the trial court in all respects as to Mr. Norquay; we affirm Mr. Schoenborn's conviction, but reverse his sentence and remand his case for resentencing.

## I.

■ Under Fed.R.Crim.P. 24(b), the defense in a felony criminal case is entitled to ten peremptory challenges; the government is entitled to six. Under the local rules of the trial court, peremptory strikes are to be made alternately by the defense and the government (3–2, then 3–2, then 2–1, then 2–1). In this case, the trial court ruled that the defense and the government were to make their peremptory strikes simultaneously, each without knowledge of the other's choices. As it turned out, the defense and the government struck two of the same people. The defendants argue that they were effectively deprived of two of their peremptory strikes because of this development.

The Supreme Court has held that blind-strike methods such as the one used in this case are acceptable as long as all jurors who may be subject to peremptory strikes are disclosed to the defense before the strikes must be made. *See Pointer v. United States*, 151 U.S. 396, 405–06, 409, 411–12, 14 S.Ct. 410, 413, 415, 416, 38 L.Ed. 208 (1894); *see also United States v. Miller*, 946 F.2d 1344, 1346–47 (8th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1501, 117 L.Ed.2d 641 (1992). The primary authority cited by the defendants in support of their argument is a case in which the defense was neither told in advance of the system that would be used nor given the chance to exercise peremptory strikes once all jurors qualified by voir dire were known. *See United States v. Sams*, 470 F.2d 751, 755 (5th Cir.1972). Neither of those circumstances is present in this case.

It is true that the local rules of the trial court prescribe a different system. We do not know why the court was moved to depart from the local rules in this instance; but the defense had advance notice of the system to be used, and we do not believe that the trial court's act amounted to an abuse of discretion. *See, e.g., United States v. Miller*, 946 F.2d at 1346; *see also United States v. Sams*, 470 F.2d at 755. As the government points out, the defense was entitled to make ten strikes and it did so. We therefore affirm the trial court on this issue.

## II.

The defendants asked for a jury instruction stating that no criminal intent was present if a defendant had "a reasonable and good faith belief" that the alleged victim had consented to the sexual act charged. The trial court declined to give that instruction. The defendants allege that by refusing to give that instruction, the trial court prevented them from presenting both of their theories of the case, which were, first, that the alleged victim actually did consent and, second, that even if she did not, the defendants reasonably believed that she had consented.

■ The statute involved prohibits causing a person to "engage in a sexual act ... by using force against that ... person." *See* 18 U.S.C. § 2241(a)(1). The manifest purpose of the statute is to criminalize sexual acts engaged in with a person whose will is not actually engaged but is overcome by violence. It will therefore be a rare case indeed where the defense of reasonable mistake will be available, since the need to employ force will necessarily indicate, as a general matter, a lack of consent so obvious as to render a mistake impossible. We hold, therefore, that the matter of reasonable mistake is an affirmative defense that requires the defendant to introduce some evidence, direct or circumstantial, of a reasonable basis for having made a mistake. Unless and until the defendant does so, the trial court is not required to give the requested instruction. *See* 2 C. Wright, *Federal Practice and Procedure: Criminal* 2d § 403 at 412–23 (1982).

■ The trial transcript makes clear that the basis of the defense in this particu-

lar case was not that the defendants mistakenly believed that the woman had consented but, rather, that no force was involved and that she actually did consent. This is clear from the opening statement of each of the defendants, the cross-examination of the alleged victim, and the testimony of Mr. Schoenborn (Mr. Norquay did not testify). Under these circumstances, the evidence offered did not justify the instruction requested. Even if there had been error in refusing the instruction, we hold it harmless since no reasonable jury would have found under the evidence that the defendants were laboring under a reasonable mistake of fact. *See* Fed.R.Civ.P. 52(a). We therefore affirm the trial court's refusal to give the instruction in question.

### III.

■ Mr. Norquay contends that there was insufficient evidence to convict him either of using force or of aiding and abetting Mr. Schoenborn's use of force. In reviewing a challenge to sufficiency of the evidence, the appeals court must examine the evidence in the light most favorable to the government. *See, e.g., United States v. Demarrias*, 876 F.2d 674, 678 (8th Cir. 1989).

The alleged victim testified that she was originally sitting between Mr. Schoenborn and Mr. Norquay while riding in Mr. Schoenborn's truck; that Mr. Schoenborn stopped the truck, got out, hit her with his fist, pulled off her shoes and pants, and raped her with her legs hanging out of the truck; that she tried to fight him without success; that Mr. Norquay then raped her as well, although she tried to fight him; that the defendants drove her deeper into the woods, where Mr. Schoenborn pushed her onto the ground and both defendants raped her again; that the defendants then put her back in the truck; that Mr. Schoenborn threatened her if she told anyone; and that the defendants drove to a third place, where they both raped her again in the truck. She also testified that Mr. Norquay tried to kiss her while Mr. Schoenborn was raping her. We find this testimony more than sufficient to allow the jury to conclude that Mr. Schoenborn used force and that Mr. Norquay assisted in that use of force.

### IV.

■ Mr. Schoenborn contends that the trial court erred in allowing various witnesses to testify about the alleged victim's emotional condition and her statements to them that she had been raped. Mr. Schoenborn argues that this amounted to admission of others' opinions as to her credibility and that her own statements were hearsay; he also argues that this testimony amounted to admission of evidence that she suffered from rape trauma syndrome.

All but one of the excerpts provided by Mr. Schoenborn indicate that the witnesses were not asked and were not permitted to state whether they believed that the alleged victim had indeed been raped. The woman's statements, moreover, are not hearsay, because they were not offered to prove the truth of their content. *See* Fed. R.Ev. 801(c). The excerpts indicate instead that the testimony as to the woman's emotional condition and her statements to others about having been raped was offered to explain why the witnesses stopped for the woman on the highway late at night, took her to the police station, and sent her to be interviewed by an investigator. We also believe that the woman's statements about having been raped could have been characterized as not hearsay under Fed.R.Ev. 801(d)(1)(B), which allows statements "consistent with [a witness's, in this case, the alleged victim's] testimony and ... offered to rebut an ... implied charge ... of ... fabrication."

■ The one statement that might be questionable in some circumstances is the FBI agent's description of the woman as "traumatized." In this case, however, the trial transcript makes clear that the FBI agent's conclusion on that point was given to explain why he skipped from topic to topic in his initial interview with the alleged victim (to divert her attention from her emotions, so that he could accurately record her account of the events in question)

and why he noted her demeanor in particular parts of his report (because she became "especially upset, was crying and could not even speak at that point").

In the circumstances of this case, we see no abuse of discretion in the trial court's admission of the testimony about the woman's emotional condition and her statements to others that she had been raped. *See, e.g., United States v. Westbrook,* 896 F.2d 330, 335 (8th Cir.1990).

As to the question of evidence on rape trauma syndrome, Mr. Schoenborn has offered nothing in support of his contention that such evidence is inadmissible in federal court. Nor does the trial transcript show that any expert testimony was in fact offered on that issue. We therefore affirm the trial court's evidentiary rulings.

### V.

■ The trial court gave a jury instruction stating that voluntary intoxication by a defendant was not a defense. Mr. Schoenborn challenges this instruction, asserting that it was not supported by the evidence and that even if supported by the evidence, it was unfairly prejudicial, since it called to mind stereotypes of the drunken Indian (both defendants were Indians).

It is true that a voluntary intoxication instruction should not ordinarily be given in a rape case, because rape is a crime of general intent. *See, e.g., United States v. Lavallie,* 666 F.2d 1217, 1219–20, 1222–23 (8th Cir.1981). In cases involving general-intent crimes where considerable evidence has been introduced about the intoxicated state of a defendant, however, this court has held that giving such an instruction, even over a defendant's objection, to make clear to the jury that voluntary intoxication is not a defense is not unfairly prejudicial. *See, e.g., United States v. McMillan,* 820 F.2d 251, 258 (8th Cir.1987), *cert. denied,* 484 U.S. 898, 108 S.Ct. 234, 98 L.Ed.2d 193 (1987).

■ Mr. Schoenborn's own testimony offered plentiful evidence of his intoxication on the night of the events in question. Between 2:00 p.m. and midnight, he admitted to sharing a case of beer and a pint of schnapps with three others and to drinking at least four other beers in addition. He stated that he felt "pretty well drunk" during the time that the alleged victim was in his truck. In the circumstances of this case, we decline to reverse Mr. Schoenborn's conviction because of the challenged instruction.

### VI.

■ Mr. Norquay challenges the trial court's four-level enhancement of his offense conduct for the use of force. *See* U.S.S.G. § 2A3.1(b)(1). He argues that the evidence was insufficient on the use of force.

It is well settled that evidence sufficient for a conviction under 18 U.S.C. § 2241(a)(1) is also sufficient to sustain the application of an enhancement for the use of force under the guidelines. *See, e.g., United States v. Amos,* 952 F.2d 992, 994 (8th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1774, 118 L.Ed.2d 432 (1992). There was no error in the trial court's action in this regard.

■ Mr. Norquay also challenges the trial court's refusal to reduce his offense conduct by two levels for being a minor participant. *See* U.S.S.G. § 3B1.2(b). Mr. Norquay contends that the evidence was that Mr. Schoenborn was the primary actor in the events in question. Given the testimony that Mr. Norquay also raped the woman three times in a period of hours, we do not think that the trial court's refusal to grant this reduction was clearly erroneous. *See, e.g., United States v. Ellis,* 890 F.2d 1040, 1041 (8th Cir.1989) *(per curiam).*

### VII.

In sentencing Mr. Schoenborn, the trial court referred to evidence of other prior criminal conduct by Mr. Schoenborn that did not result in a conviction in federal or state court. Such conduct may be used as a basis for upward departure. *See* U.S.S.G. § 4A1.3(e). This evidence, presented at the sentencing hearing, was the testimony of an FBI agent that Mr. Schoen-

born had admitted striking his ex-girl-friend, who fell to the ground, and then kicking her (this incident was the basis for a tribal court conviction for assault in 1990). The FBI agent also testified that Mr. Schoenborn had admitted striking his ex-girlfriend at other times as well. The trial court then noted that Mr. Schoenborn had three tribal court convictions—two for assault and one for theft. Although these convictions were not counted in Mr. Schoenborn's criminal history score, *see* U.S.S.G. § 4A1.2(i), the trial court did state that it would consider those convictions in its evaluation of the adequacy of Mr. Schoenborn's criminal history category as related to whether an upward departure was warranted. *See* U.S.S.G. § 4A1.3(a).

The guideline range for Mr. Schoenborn was 108 to 135 months of imprisonment. Finding that Mr. Schoenborn's criminal history category did not adequately reflect the seriousness of his past criminal conduct, *see* U.S.S.G. § 4A1.3, the trial court concluded that Mr. Schoenborn's criminal history was more akin to that of a defendant with three prior felony convictions, one involving force. At Mr. Schoenborn's offense level, such a criminal history would generate a guideline range of 135 to 168 months of imprisonment. The trial court therefore departed upward to impose a sentence of 162 months of imprisonment. Mr. Schoenborn challenges this upward departure as an abuse of discretion. *See, e.g., United States v. Perkins*, 929 F.2d 436, 438 (8th Cir.1991).

On this issue, Mr. Schoenborn contends that the trial court abused its discretion in two ways. First, he argues that the FBI agent's testimony, and other accounts of previous criminal conduct by Mr. Schoenborn contained in the presentence report, were hearsay in violation of the confrontation clause. Second, he argues that using his tribal court convictions as a basis for departing from the guidelines was improper, since he was not represented by counsel for the convictions at issue. (Under tribal law, defendants in tribal court proceedings may consult with a tribal layman; under federal law, defendants in tribal court proceedings may hire a lawyer at their own expense but are not entitled to one paid for by the tribe or the government, *see* 25 U.S.C. § 1302(6).)

Sentencing questions as to Mr. Schoenborn are further complicated by his contention that the trial court also enhanced his sentence because of extreme conduct exhibited during the crime, *see* U.S.S.G. § 5K2.8, even though the trial court stated in its sentencing memorandum that no enhancement was being applied on that ground. Mr. Schoenborn quotes from remarks of the trial court at the sentencing hearing that characterize Mr. Schoenborn's conduct as "callous," "brutal," and "with a disregard for any element of [the victim's] humanity," and express concern that the applicable sentencing guideline range is not sufficiently harsh.

We have no hesitation in finding that the trial court properly accepted the testimony of the FBI agent as to other criminal conduct by Mr. Schoenborn. That testimony summarized statements made by Mr. Schoenborn himself, which, as his own admissions, are not considered hearsay. See Fed.R.Ev. 801(d)(2)(A). Mr. Schoenborn had ample opportunity, moreover, to cross-examine the FBI agent about the reliability of his recollection of Mr. Schoenborn's statements and the circumstances under which they were made. With respect to Mr. Schoenborn's contention that the trial court considered hearsay in the presentence report in sentencing him, the transcript of the sentencing hearing makes it clear, to the contrary, that the trial court did not rely on those accounts in considering whether other criminal conduct on Mr. Schoenborn's part would warrant an upward departure. We therefore reject Mr. Schoenborn's challenge to the trial court's use of information about Mr. Schoenborn's prior criminal conduct.

The incident that was the subject of the FBI agent's testimony was also the basis for Mr. Schoenborn's 1990 tribal court conviction for assault. Since the trial court properly considered that incident as relevant to the evaluation of prior criminal conduct by Mr. Schoenborn, *see* U.S.S.G.

§ 4A1.3(e), rather than merely the fact that the conduct resulted in a tribal court conviction, we need not reach the issue of whether the trial court could use the 1990 tribal court conviction for assault as a basis for upward departure. *See, e.g., United States v. Brady*, 928 F.2d 844, 854 n. 17 (9th Cir.1991). As to the other two tribal court convictions considered by the trial court, however, we are troubled.

■ The Supreme Court has stated that misdemeanor convictions obtained in the absence of counsel for the defendant may not be used as a basis for enhancing a sentence of imprisonment to be imposed upon a defendant. *See Baldasar v. Illinois*, 446 U.S. 222, 224, 100 S.Ct. 1585, 1586, 64 L.Ed.2d 169 (*per curiam*), at 225–26, 228, 100 S.Ct. at 1586–87, 1588 (Marshall, J., concurring) (1980); *see also United States v. Tucker*, 404 U.S. 443, 447, 448–49, 92 S.Ct. 589, 592, 592, 30 L.Ed.2d 592 (1972). At least one appellate court has held, in addition, that where a defendant was not represented by counsel at tribal court proceedings, any consequent tribal court conviction may not be used as a basis for upward departure. *United States v. Brady*, 928 F.2d at 853–54. We believe this is to be a correct statement of the law.

At the sentencing hearing and in its sentencing memorandum, the trial court specifically stated that it was departing upward because of Mr. Schoenborn's tribal court convictions for assault in 1988 and for theft in 1990. The trial court also specifically stated that these convictions made Mr. Schoenborn's criminal history more analogous to that of a defendant with three prior felony convictions, one involving force, and therefore that Mr. Schoenborn should be sentenced within the guideline range that would be applicable under those circumstances.

Mr. Schoenborn's offense level was 31. His criminal history, without consideration of prior criminal conduct or tribal court convictions, was in category I, which has a range of 108 to 135 months of imprisonment. At the sentencing hearing, the government suggested that the 1990 assault incident would be equivalent to a felony conviction adding two points to Mr. Schoenborn's criminal history, *see* U.S.S.G. § 4A1.1(b), and therefore warranted placing him in criminal history category II, which has a range of 121 to 151 months. The trial court, however, found that all three tribal court convictions should be considered and were equivalent to felony convictions that would add four points to Mr. Schoenborn's criminal history. The trial court concluded, therefore, that Mr. Schoenborn should be sentenced in the range applicable to a defendant in criminal history category III, or 135 to 168 months. The trial court then determined that 162 months was the appropriate sentence.

The only information that the trial court had on the 1988 assault conviction and the 1990 theft conviction was in the presentence report. The government offered no independent testimony about the incidents that led to those convictions. Mr. Schoenborn's lawyer stated that those two tribal court convictions were obtained in the absence of counsel for the defendant and objected to their use by the trial court in evaluating Mr. Schoenborn's criminal history. Because the use of criminal history points that would be associated with those convictions moved Mr. Schoenborn into a criminal history category two levels above that in which he would ordinarily have been placed, we believe that the trial court's upward departure in this particular case may have been unconstitutional. Since the trial court made no finding, however, on whether the tribal court convictions were uncounseled, we cannot say with certainty whether the use of these convictions for sentencing purposes violated the sixth amendment. We therefore reverse Mr. Schoenborn's sentence and remand the case to the trial court for resentencing in light of the concerns expressed in this opinion. Because of this resolution, we need not reach Mr. Schoenborn's arguments as to whether the trial court did in fact enhance his sentence because of extreme conduct.

## VIII.

For the reasons stated, Mr. Norquay's conviction and sentence are affirmed. Mr.

Schoenborn's conviction is affirmed, but his sentence is reversed and his case is remanded to the trial court for further proceedings not inconsistent with this opinion.