**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 9, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MELVIN MARTIN,

Defendant-Appellant.

No. 07-2090

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. NO. 1:05-CR-1268-BB)**

---

Ann Steinmetz, Albuquerque, New Mexico, for Defendant-Appellant.

David N. Williams, Assistant United States Attorney (Larry Gómez, United States Attorney, with him on the briefs), Albuquerque, New Mexico, for Plaintiff-Appellee.

---

Before **LUCERO**, **HOLLOWAY** and **McCONNELL**, Circuit Judges.

---

**McCONNELL**, Circuit Judge.

In March, 2007, a federal jury convicted Melvin Martin of two counts of rape and two counts of assault for brutally attacking his girlfriend in their shared home on the Navajo reservation. Before trial the defendant attempted to plead

guilty to the assault charges—but not the rape charges—and the judge refused to accept his partial plea. At trial, Mr. Martin requested a jury instruction about the victim's possible consent to the sex, which the judge refused to give. After trial, the judge sentenced Mr. Martin to 30 years in prison. The defendant appeals, challenging these three decisions. We conclude that there was no error, and affirm his conviction and sentence.

## I. BACKGROUND

The following facts emerged at trial, and are not challenged on appeal: Through the internet, Melvin Martin met the victim, whom we will call Jane Doe. She had left her home in Indiana and came to Crown Point, New Mexico, on the Navajo reservation, to live with him. The couple had two children together, and lived in what the victim described as a common-law marriage. Mr. Martin attended classes at the Crownpoint Institute of Technology while Ms. Doe cared for the children; they survived on food stamps and other government assistance.

On May 8, 2005[1]—Mother's Day—Mr. Martin and three friends sat drinking in the living room of the house while Ms. Doe took care of the children in a bedroom. At one point, Ms. Doe emerged into the main room of the house to

---

[1] On appeal, Mr. Martin disputes this date, insisting that because the indictment alleges that the crime was committed "[o]n or about May 9, 2005," R. Vol. 1, Indictment at 1, these events must have taken place on Monday, May 9. However, Ms. Doe testified without contradiction that the assault took place on May 8, which is consistent with the indictment's approximation. In any case, Mr. Martin does not argue that the date has any relevance to his legal claims.

get a bottle of baby formula and warm it momentarily in the microwave. This apparently angered Mr. Martin, and after his friends left, he accused Ms. Doe of feigning her need for the baby formula in order to flirt with his friends. When she denied the accusation, he savagely attacked her.

He began by beating her with his fists, kicking her, and throwing her into the bathroom. There, he bashed her head against the sink faucet and started to strangle her. He anally raped her, ignoring her pleas to stop. During a brief respite from the assault and rape, Mr. Martin asked her repeatedly which of his friends she wanted to have sex with. Ms. Doe denied that she was interested in any of his friends, and he accused her of lying. Finally, she named one of the three men who had been in the living room earlier.

This further enraged Mr. Martin, who said, "[w]ell, that's it, I'm going to cut out your G spot so you won't be able to feel love anymore," and retrieved a knife from the closet. R. Vol. 6, at 174. He repeatedly stabbed Ms. Doe in the vagina and throughout her lower body. She also received cuts to her hand when she tried to defend herself. Mr. Martin then allowed her to wash her wounds in the bathroom. When she came out, he cut off her hair with the knife and demanded that she perform oral sex on him. Frightened, Ms. Doe complied. She later testified, "I was scared. I had already been beaten, bloody and stabbed, so I just did it to save my face." R. Vol. 6 at 176. Blood was spattered on the walls and ceiling. Afraid to get blood on the bed, she fell asleep on the floor.

Ms. Doe did not immediately report the incident to the police.  But her wounds became infected and she had trouble walking, so Mr. Martin took her to the emergency room in Crown Point.  Because of her dire condition, she was flown to Albuquerque, where her injuries confined her to the hospital for five months.  There, she eventually related the incident to an FBI agent.  The injuries to her bladder, uterus, intestine, and other internal organs required nine or ten surgeries, including a hysterectomy.  A physician that treated her testified that "the only reason that [she] survived this event was . . . her youth and . . . her underlying good health.  A lot of people probably would not have survived a similar assault."  R. Vol. 6, at 277.

Mr. Martin was then indicted by a federal grand jury.  A superseding indictment laid out four charges: two counts of aggravated sexual abuse in violation of 18 U.S.C. §2241(a) (for the anal and oral sex), and one count each of assault under 18 U.S.C. § 113(a)(3) (for the stabbing) and § 113(a)(6) (for the beating).  These are federal criminal statutes that apply to crimes in "the Indian country."  18 U.S.C. § 1153.  The advisory Guidelines sentence for the sexual abuse charges is much higher than for the assault charges, and Mr. Martin asked to plead guilty to the assault without pleading guilty to the sexual abuse.  While he admitted that he beat and stabbed Ms. Doe, he claimed that their sexual relations had always been consensual, even after he attacked her.  The judge

refused to accept the partial plea, and Mr. Martin chose to go to trial on all four charges.

At trial, the government presented testimony from the victim, from a doctor who had treated her in Albuquerque, and from an evidence technician with the Navajo Department of Criminal Investigations. Mr. Martin did not testify and presented no evidence on his own behalf. He did ask that the jury receive an instruction about possible consent to the anal and oral sex, which the district judge refused to give. The jury found him guilty of all four counts. When the defendant addressed the court at sentencing, he insisted that he "never had to rape no women . . . in my life, ever. . . . I never had to force myself upon a woman to have sex." R. Vol. 9, at 28. The judge calculated the defendant's sentence under the advisory sentencing guidelines: 292–365 months. The judge then imposed a sentence within the guidelines range—two 360-month sentences for the rapes and two 120-month sentences for the assaults, all running concurrently. Mr. Martin now appeals, arguing that he should have been permitted to plead guilty, should have received his consent instruction, and that the judge miscalculated his advisory guidelines range. We consider each issue in turn and affirm.

## II. GUILTY PLEA

Mr. Martin told the district court that he wanted to plead guilty to the assaults, but still proceed to trial on the rapes. The court held two hearings to consider the issue, and refused to accept the partial plea because it wanted to

avoid making complicated evidentiary rulings and potentially confusing the jury by letting the defendant stipulate to half the government's case. On appeal, Mr. Martin argues that this violated his constitutional right to plead guilty. We have doubts that the district court's desire to avoid confusing the jury or complicating the evidentiary issues was a sufficient basis for rejecting the partial plea. *See In re Vasquez-Ramirez*, 443 F.3d 692, 695–96 (9th Cir. 2006) ("[V]iewing Rules 11(a) and (b) together, it is clear that a court must accept an unconditional guilty plea, so long as the Rule 11(b) requirements are met."). But we conclude that the decision can be affirmed on another ground: the lack of a factual basis for Mr. Martin's plea.

The defendant acknowledges that his constitutional right to plead guilty, to whatever extent it exists, applies only "if all foundational requirements are met." Aplt's Br. 18. One such requirement is that the defendant must admit the "factual basis" of the charged crime. Fed. R. Crim. P. 11(b)(3). There is no constitutional right to have a plea accepted without admitting the factual basis for it. *See Santobello v. New York*, 404 U.S. 257, 261–62 (1971); *North Carolina v. Alford*, 400 U.S. 35, 38 n.11 (1970); *United States v. Young*, 45 F.3d 1405, 1414 (10th Cir. 1995); *United States v. Brown*, 331 F.3d 591, 594 (8th Cir. 2003); *United States v. Gomez-Gomez*, 822 F.2d 1008, 1010–11 (11th Cir. 1987). The government argues, and we agree, that Mr. Martin did not admit the facts necessary to convict him of both assaults.

To plead guilty to the assault with the knife, Mr. Martin had to admit that he committed "assault with a dangerous weapon, with intent to do bodily harm, and without just cause or excuse." 18 U.S.C. § 113(a)(3). He did not do so. During his first motion hearing, Mr. Martin testified on direct examination that he believed he was guilty of the assaults "[b]ecause I did stab the victim and she was hurt, and I did beat her." R. Vol. 4, at 53. Alone, this statement does not confess to the specific intent required by § 113(a)(3). *See United States v. Two Eagle*, 318 F.3d 785, 791 (8th Cir. 2003). On cross-examination the prosecution gave Mr. Martin another chance to admit the necessary intent, asking the defendant, "[w]hat was your intent when you were stabbing her in the vagina?" R. Vol. 4, at 55. Defense counsel objected to this question, and the district court at first sustained the objection until the prosecutor pointed out that this charge "requires that the defendant admit with intent to do bodily harm, [sic] and the last question I was asking him what his intent was." R. Vol. 4, at 56. Acknowledging this, the court allowed the question. The following exchange ensued:

> [Government]: Mr. Martin, what was your intent when you inserted that knife into Jane Doe's vagina?
>
> [Defendant]: Well, what do you mean by the word intent? Could you define that word for me.
>
> [Government]: No. What did you say right before you inserted that knife into her vagina? Do you remember saying, "I'm going to cut out your G spot so you can't feel anything anymore"?
>
> [Defendant]: No, I don't recall.

[Government]: Were you drinking that night?

[Defendant]: Yes, I was.

[Government]: Your honor, under the circumstances, the defendant .
. . does not seem to admit to specific intent. I would ask the
Court on that basis to reject the Defendants' [sic] plea to both
[c]ounts . . . .

R. Vol. 4, at 56–57. Defense counsel and the court each questioned the defendant

once more, but neither asked him again about his intent to do bodily harm, and

Mr. Martin never admitted that he had such intent. Nor did the parties re-open

the issue at the second motion hearing. Defense counsel's decision not to,

especially in light of Mr. Martin's request for a definition of "intent," is puzzling.

However, this leaves us with admissions that are not enough for a conviction

under § 113(a)(3), and therefore not enough to plead guilty. Fed. R. Crim. P.

11(b)(3). In the face of the government's objection, Mr. Martin had to admit to

specific intent to injure in order to plead guilty to this charge.[2]

It is true that only one of the assault charges lacked a factual basis, because

the charge based on the beating has no such intent requirement. It merely

requires that the defendant admit to "[a]ssault *resulting* in serious bodily injury,"

---

[2] Below, Mr. Martin's lawyer appeared to argue that one can infer specific
intent to injure from Mr. Martin's unadorned admission that he stabbed the
victim, even though more facts are generally required to support such an
inference of specific intent. *See United States v. Gibson*, 896 F.2d 206, 209–10
(6th Cir. 1990); *United States v. Guilbert*, 692 F.2d 1340, 1344 (11th Cir. 1982).
On appeal, counsel abandoned this argument by failing to brief it.

18 U.S.C. § 113(a)(6) (emphasis added), and there is no suggestion that Mr. Martin failed to admit to either of these facts. He therefore may have been entitled to plead guilty to *one* of the assault charges had he wanted to. However, the defendant never attempted to plead guilty to only one charge below, and at oral argument Mr. Martin's lawyer confirmed that the defendant was not interested in pleading guilty to only one of the two assault charges.

Strategically, this is unsurprising. The advantage to pleading guilty to the assault charges was that it could potentially have limited the scope of evidence the government could introduce at trial about the victim's injuries. If he had been permitted to plead to both assault charges, Mr. Martin was prepared to argue that testimony about how Ms. Doe's injuries turned septic when left untreated was irrelevant to the charges of forcible rape. This might have excluded a number of photographs and medical testimony that the defendant feared would influence the jury's view of the rape charges.[3] But once the assault charge for the stabbing went to trial, the defendant gained little strategic advantage from pleading to the other assault because the consequences of the knife wounds would likely remain admissible. Thus, because Mr. Martin wanted to plead guilty only to both

---

[3] The defendant entered a standing objection to this testimony below. Because we conclude that the plea was properly rejected, we do not need to decide what evidence would have been excluded if the plea were accepted.

assaults or to neither, and because he was unwilling to admit the factual basis necessary to plead guilty to both of them, he had no right to plead guilty here.

## III.  JURY INSTRUCTIONS

In the district court, Mr. Martin objected to the jury instructions on the sexual assault charges, complaining that there was no instruction about the victim's consent and proposing a consent instruction of his own.  Both his proposal and his objection were denied.  "We review the instructions as a whole de novo to determine whether they accurately informed the jury of the governing law.  We then review any instructions offered by the defendant and rejected by the court.  A defendant is entitled to an instruction on his theory of the case if the instruction is a correct statement of the law, and if he has offered sufficient evidence for the jury to find in his favor.  We review a district judge's refusal to issue a requested instruction under this standard for abuse of discretion." *United States v. Nacchio*, 519 F.3d 1140, 1158–59 (10th Cir. 2008) (internal citations and quotation marks omitted).  Because the instruction Mr. Martin requested misstated the law and the instructions he received did not, there was no error.

First we consider the jury instructions Mr. Martin received.  On the two sexual assault counts, the district judge instructed the jury:

> [T]he government must prove each of the following elements beyond a reasonable doubt:
> **First,** that the Defendant Melvin Martin caused [Jane Doe] to engage in a sexual act which consisted of contact between his penis and her [anus/mouth;]

-10-

**Second,** that the Defendant Melvin Martin acted knowingly in causing [Jane Doe] to engage in that sexual act;

**Third,** that the Defendant Melvin Martin did so by using force against [Jane Doe] or by threatening or placing [Jane Doe] in fear that she would be subjected to death or serious bodily injury; and

**Fourth,** that the Defendant is an Indian, the incident took place in Indian Country, and that the incident happened within the State and District of New Mexico. The parties have stipulated to the facts in this fourth element; therefore, you should accept these facts as true.

R. Vol. 1, Instructions 7–8. Mr. Martin claims that these instructions misstate the law because they do not make clear that the statute applies only to non-consensual sex. It is true that the instructions do not use the word "consent," and the government does not argue that the statute could be applied to violent sex acts that are nonetheless consensual between the parties. *See United States v. Norquay*, 987 F.2d 475, 478 (8th Cir. 1993) ("The manifest purpose of [18 U.S.C. § 2241(a)(1)] is to criminalize sexual acts engaged in with a person whose will is not actually engaged but is overcome by violence.") *overruled on other grounds by United States v. Thomas*, 20 F.3d 817, 823 (8th Cir. 1994) (en banc). Nonetheless, the instructions taken as a whole correctly convey that the sex must be nonconsensual, and therefore "accurately informed the jury of the governing law." *Nacchio*, 519 F.3d at 1159.

The key is the interaction between the first and third elements of the instructions. These require the government to prove that the defendant "caused [the victim] to engage in a sexual act . . . by using force . . . or by threatening . . .

-11-

death or serious bodily injury." R. Vol. 1, Instructions 7–8. That is, the government was required to prove that force or serious threat—and therefore not the victim's consent—was the cause of the sex act. This is all the proof of non-consent that the statute demands. Indeed, the instructed elements were copied from the statute's text. *See* 18 U.S.C. § 2241(a) ("Whoever . . . knowingly causes another person to engage in a sexual act . . . by using force against that other person or . . . by threatening or placing that other person in fear that any person will be subjected to death [or] serious bodily injury . . . shall be . . . imprisoned for any term of years or life."). By requiring the government to prove that threat or force *caused* the sexual act, the instructions correctly stated the law under § 2241(a). *See United States v. Rivera*, 43 F.3d 1291, 1298 (9th Cir. 1995) (causation requirement of § 2241 accounted for defendant's theory that the victim "consensually engaged in intercourse rather than out of fear.").

Though the instructions as a whole were not erroneous, Mr. Martin also requested a specific instruction clarifying the role of consent, and now argues that the district judge abused his discretion in denying it. He would have had the jury instructed:

> Consent is willingness in fact for conduct to occur. Consent may be manifested by action or inaction and need not be communicated to the actor. If words or conduct are reasonably understood by another to be intended as consent, they constitute apparent consent and are as effective as consent in fact.

-12-

R. Vol. 1, Defendant's Requested Instruction J. The defense borrowed the language from an instruction in a civil case arising under the Eighth Amendment and 42 U.S.C. § 1983. *Giron v. Corr. Corp. of Am.*, 191 F.3d 1281, 1286–87 (10th Cir. 1999).

The proposed instruction does not correctly describe the role of consent in a trial under 18 U.S.C. § 2241. Under the statute, actual consent is relevant to the extent it negates the required causation. But merely apparent consent does not negate causation, because it is apparent, not real. It is therefore not necessarily true that "apparent consent" is "as effective as consent in fact." "Apparent consent" might be relevant to disproving a defendant's *mens rea* in some cases, but only by negating knowingness, the second element of the crime, not by negating the causation requirement embodied in the first and third. The proffered instruction improperly equated actual and apparent consent, and also failed to explain how either form of consent related to the elements the jury was required to find. Thus, the district judge did not abuse his discretion in concluding that this instruction from a civil case under § 1983 should not be transplanted into a criminal rape case.

Moreover, "'[i]t is not error to refuse to give a requested instruction if the same subject matter is adequately covered in the general instructions.'" *United States v. Cerrato-Reyes*, 176 F.3d 1253, 1262 (10th Cir. 1999) (quoting *United States v. Alonso*, 790 F.2d 1489, 1496 (10th Cir. 1986)) (other internal quotation

-13-

marks omitted).  By requiring the jury to find that the defendant "caused [the victim] to engage in a sexual act . . . by using force . . . or by threatening . . . death or serious bodily injury,"  R. Vol. 1, Instructions 7–8, the district court's instructions adequately covered the issue of lack of consent.  The district court might well have concluded that the defendant's proffered instruction, with its unexplained references to manifestation of consent by "inaction," to the lack of any need for the consent to be communicated to the defendant, and to "apparent" consent, might be more confusing and less enlightening to the jury than the simpler version based on the language of the statute.

Indeed, it is not clear that there was an adequate factual basis for the requested instruction.  As the district judge commented at sentencing, "[y]ou can't bang someone's head into the sink hard enough to put blood on the ceiling and then claim sex following that was consensual."  R. Vol. 9, at 36.[4]  On cross-examination, Mr. Martin's lawyer tried to cast doubt on the victim's testimony that she was raped by suggesting that there were inconsistencies in her testimony, but this tactic proved ineffective.  Ms. Doe did admit that when she was heavily medicated and had just woken up "out of a coma" in the hospital, she did not tell the FBI agent interviewing her that she had explicitly said "no" when Mr. Martin

---

[4] The defendant interjected, "I never banged her on the sink, Your Honor. That happened by hitting her against the wood stove." R. Vol. 9, at 36.  It is not clear whether this is true, *see* R. Vol. 6, at 183, 185, 239–40, and it is beside the point.

anally raped her. R. Vol. 6, at 228. She also testified that she had never refused to have oral sex with Mr. Martin earlier in their relationship, before the night of the assaults, although she had previously refused him anal sex. But she said nothing to contradict her earlier testimony that she had not consented to any of the sex acts on the night of the assaults. In light of the uncontested evidence of the brutal beating, the court was within its discretion to refuse Mr. Martin's instruction on apparent consent even if it had correctly stated the law. *See United States v. Boyles*, 57 F.3d 535, 542–43 (7th Cir. 1995) (Such instructions should be "'a rare case indeed,'" under 18 U.S.C. § 2241 because "'the need to employ force will necessarily indicate, as a general matter, a lack of consent so obvious as to render a mistake impossible.'" (quoting *Norquay*, 987 F.2d at 478)).

## IV.  SENTENCING

The district court adopted the PSR's recommendations and concluded that Mr. Martin's offense level was 38 and his criminal history category was III. The defendant complains that the court miscalculated his advisory guidelines range by improperly grouping his multiple offenses, by applying an enhancement for bodily injury to the rape charges, and refusing to find that he had accepted responsibility for his crimes. These are claims of "procedural" unreasonableness reviewed for abuse of discretion. *See United States v. Peña-Hermosillo*, 522 F.3d 1108, 1109, 1111 (10th Cir. Apr. 15, 2008); *United States v. Smart*, 518 F.3d 800, 803–04 (10th Cir. 2008). We find no error in the district court's calculations.

## A. Grouping and Bodily Injury

First, Mr. Martin argues that the district judge erred in determining the total offense level for Mr. Martin's multiple counts of conviction. The judge, accepting the recommendation of the PSR, calculated Mr. Martin's sentence as follows: for each of the rape charges, the Sentencing Guidelines provide a base offense level of 30. U.S.S.G. § 2A3.1. There is a 4-point enhancement for convictions under 28 U.S.C. § 2241, the aggravated sexual abuse statute under which the defendant was convicted. U.S.S.G. § 2A3.1(b)(1). There is another 4-point enhancement if the victim sustained life-threatening bodily injury. *Id.* § 2A3.1(b)(4). This produced an offense level of 38 on these counts. The assaults would have had an offense level of up to 25 (for the assault with the knife) and 21 (for the other assault), *see id.* § 2A2.2, but as we shall explain they will be disregarded in any total-offense-level calculation because their level is so much lower than that of the rapes. Chapter 3, Part D then provides the rule for combining all of these counts. If they are counted as a single transaction "involving substantially the same harm," (*i.e.*, "grouped"), the total offense level is 38—the level of the most serious count.[5] U.S.S.G. §§ 3D1.2, 3D1.3(a). If each

---

[5] There is a different mechanism for grouping under § 3D1.2(d), a provision that deals with multiple offenses whose sentences are based on aggregate losses or quantities. Subsection (d) "specifically exclude[s] . . . all offenses in Chapter Two, Part A," *id*, and Mr. Martin's convictions were all for offenses in §2A, so this subsection is irrelevant here.

one is counted as a separate injury or transaction, (*i.e.*, not "grouped"), the four counts cumulate to an offense level of 40—38 for the most serious count, an additional two levels for the fact that there is another equally serious count, *id.* § 3D1.4(a), and no increase for the assaults because their offense level is at least nine levels below the level of the most serious counts, *id.* § 3D1.4(c). The district judge chose to group the charges together as one transaction, thus giving Mr. Martin the lower offense level. A decision not to group the charges would have given Mr. Martin a potential Guidelines sentence of life imprisonment.

As best we understand, Mr. Martin has two complaints about this calculation: that the district judge should not have grouped the charges together, and that once the charges are not grouped, the 4-level enhancement for serious bodily injury would apply only to the assaults and not to the rapes. This would have produced an offense level of 36, and a guidelines range of 235–293 months. We are not sure why Mr. Martin's lawyer argued so strenuously below that the offenses should not be grouped, which would send his offense level up rather than down,[6] but in any case we conclude that the district court was correct on both issues.

It was proper to group the charges together. The Guidelines require grouping "[w]hen counts involve the same victim" and either "the same act or

---

[6] Mr. Martin's lawyer appeared to believe this argument about grouping was relevant in some unexplained way to the bodily-injury enhancement.

transaction" or "two or more acts or transactions connected by a common criminal objective." *Id*. § 3D1.2(a), (b). Here, the judge and the PSR concluded that all four charges were sufficiently connected, and we agree. The beatings and rapes happened over the course of a few hours with little break, as part of one prolonged brutal attack. Under those circumstances, grouping is appropriate. *See United States v. Sneezer*, 983 F.2d 920, 924–25 (9th Cir. 1992) (two counts of rape against the same victim in a short span of time should be grouped); *see also* U.S.S.G. § 3D1.3 cmt. 4 ("For example, if the defendant commits forcible criminal sexual abuse (rape), aggravated assault, and robbery, all against the same victim on a single occasion, all of the counts are grouped together under § 3D1.2.").

It was also proper to apply the bodily-injury enhancement to the rapes, for reasons that have nothing to do with grouping. Mr. Martin's argument appears to be that because the bodily injury was directly caused by the knife and the beating, it should enhance only the assaults and not the rapes. Whatever logic such a sentencing scheme might have, it is not the one envisioned by the guidelines. Guideline 2A3.1 (b)(4)(A) provides for a specific offense enhancement— applicable particularly to sexual assault charges—when "the victim sustain[s] permanent or life-threatening bodily injury." The crime is using force to procure sex, so this enhancement includes injuries sustained because the rapist was beating the victim into submission. *See United States v. Bell*, 367 F.3d 452, 470

(5th Cir. 2004). Mr. Martin perpetrated the rapes by using very serious force against the victim, and the judge concluded that this force nearly killed her. This is precisely the situation envisioned by the enhancement.

## B. Acceptance of Responsibility

Finally, Mr. Martin claims that he was entitled to a two-level downward adjustment for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, because of his attempt to plead guilty to two of the four charges. The district court refused to apply the adjustment, saying, "I see nothing in this record that convinces me there is any acceptance of responsibility." R. Vol. 9, at 20. We review this factual conclusion for clear error, *United States v. Tom*, 494 F.3d 1277, 1281 (10th Cir. 2007), and affirm it.

While § 3E1.1 does not demand that a defendant plead guilty, it does not apply to one who consistently denies the basic facts constituting the charged crime. *See* U.S.S.G. § 3E1.1 cmts. 1(a), 2. Mr. Martin not only refused to plead guilty to the rapes, the gravest charges for which he was sentenced, but affirmatively denied them. Even at his sentencing hearing, he continued to insist that he had not raped the victim because he "never had to force [him]self upon a woman to have sex." R. Vol. 9, at 28. There was thus no basis for concluding that he had accepted responsibility for the rapes.

There is at least a little evidence that the defendant accepted responsibility for the assaults, but the district judge's finding that he did not "'is entitled to

great deference on review.'" *United States v. Saffo*, 227 F.3d 1260, 1271 (10th Cir. 2000) (quoting U.S.S.G. § 3E1.1 cmt. 5.). We do not find clear error in the sentencing judge's conclusion about the assault. Furthermore, even if we did, it could not help Mr. Martin. Assuming for the sake of argument that a defendant may claim the adjustment for some charges in a group and not for others—which we have never held, *see United States v. Aguayo-Gonzales*, 472 F.3d 809, 811 n.3 (10th Cir. 2007) (collecting cases)—Mr. Martin's sentence would be unaltered by an adjustment applied only to the assaults. When the offenses are grouped together, as these were, the highest offense level is the only one relevant to the defendant's ultimate sentence. The offense level for the more serious assault is already 13 levels below that for the rapes, and two more levels would make no difference at all.

## V. CONCLUSION

There was no error in Mr. Martin's conviction or sentence. The judgment of the district court is **AFFIRMED**.