**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 7, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

IN RE:

DAVID ANTHONY HARPER,

        Appellant.

No. 13-1085

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 11-DP-51)**

---

David Anthony Harper, Pro Se, Appellant.

---

Before **TYMKOVICH**, **ANDERSON**, and **BACHARACH**, Circuit Judges.

---

**BACHARACH**, Circuit Judge.

---

Mr. David Harper is an attorney licensed in Florida and admitted to practice in the Colorado federal district court. After being admitted in Colorado, however, he was suspended for 91 days from practicing law in Florida. This suspension prompted the Colorado federal district court to conduct reciprocal disciplinary proceedings and impose its own suspension of 91 days.

Mr. Harper appeals, arguing that the district court's reciprocal suspension resulted in a denial of due process, the opportunity to confront adverse witnesses, and the right to free speech. Rejecting each contention, we affirm the district court's disciplinary order.

<u>The Disciplinary Proceedings</u>

The Florida State Bar filed a complaint against Mr. Harper for his conduct in a civil case. According to the complaint, Mr. Harper failed to coordinate hearing dates with opposing counsel despite a judicial directive, objected to his own motion after the presiding judge indicated he would grant the motion, asked the appellate court for writs of prohibition to obtain removal of a judicial officer after she indicated she would grant a properly-filed motion to disqualify, impugned the integrity and questioned the motivations of at least three judicial officers without a reasonably objective basis, and misrepresented the law to a tribunal. These allegations led to an evidentiary hearing, which led a referee to find clear and convincing evidentiary support for the allegations and to recommend disciplinary sanctions. The Florida Supreme Court adopted the referee's report in its entirety and suspended Mr. Harper for 91 days.

This suspension prompted the federal district court in Colorado to consider reciprocal discipline under Local Civil Rule 83.3(E). This rule requires attorneys admitted there to "remain in good standing in all courts where admitted." D.C. COLO. LCvR 83.3(E). An attorney is not in good standing if he is "suspended . . . by any court for any reason." *Id.*

2

To avoid discipline in the federal district court, an attorney suspended in state court must present clear and convincing evidence that:

- the state court procedure denied due process because of the lack of notice or opportunity to be heard,

- the application of the rule would create a grave injustice, and

- the federal district court has held that this kind of misconduct should result in "substantially less severe discipline."

D.C. COLO. LCvR 83.3(F).

Mr. Harper argued that he should not be suspended and requested oral argument. The federal district court disallowed oral argument and found that Mr. Harper had not satisfied his evidentiary burden. Dissatisfied, Mr. Harper invoked FED. R. CIV. P. 59(c)[1] and 60(b) and moved for reconsideration, amendment of the judgment, and relief from the judgment on grounds of newly discovered evidence and fraud. The federal district court denied Mr. Harper's motions. This appeal followed.

Reciprocal Discipline Under <em>Selling v. Radford</em>

On appeal Mr. Harper invokes his rights to due process, confrontation, and free speech, challenging the disciplinary findings of the Florida Supreme Court and the Colorado federal district court. We cannot reverse or modify Mr. Harper's suspension by the state court. *See Selling v. Radford*, 243 U.S. 46, 50 (1917) (federal courts lack authority to re-examine or reverse a state supreme court's disciplinary action against a bar

---

[1]    We assume that Mr. Harper had intended to invoke Rule 59(e), not Rule 59(c). Rule 59(c) simply provides a deadline for affidavits when someone seeks a new trial. Rule 59(e) governs motions to alter or amend a judgment.

member).  But we can entertain the challenge to the Florida proceedings insofar as the federal district court relied on them in suspending Mr. Harper.  *See In re Abrams*, 521 F.2d 1094, 1101 (3d Cir. 1975) ("[A] district court's action may be circumscribed to the extent it depends in whole or in part on a state's actions, either for the commencement of the disciplinary proceedings or for a stated basis in the determination of the sanction imposed.").

Our review is limited.  In exercising this review, we recognize that the district court has considerable discretion in attorney disciplinary matters.  *See Mattox v. Disciplinary Panel*, 758 F.2d 1362, 1364 (10th Cir. 1985).  And for the rulings on the post-judgment motions, we review only for an abuse of discretion.  *Somerlott v. Cherokee Nation Distribs., Inc.*, 686 F.3d 1144, 1152 (10th Cir. 2012) (Rule 59(e)); *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1009 (10th Cir. 2000) (Rule 60(b)).  Still, we must consider de novo whether the federal district court violated Mr. Harper's constitutional rights.  *See Mattox*, 758 F.2d at 1364 (10th Cir. 1985) (considering de novo "whether the procedures established [by a district court for admission to its bar] meet constitutional standards"); *United States v. Nichols*, 169 F.3d 1255, 1267 (10th Cir. 1999) ("Allegations of a due process violation are reviewed *de novo*." (citation omitted)).

These rights were identified in *Selling v. Radford*, 243 U.S. 46, 50 (1917).  There the Supreme Court held that a federal district court can rely on a state court's judgment unless an "intrinsic consideration of the record" shows: (1) that due process was lacking in the state procedure because the attorney was denied notice and a fair opportunity to be

4

heard; (2) that there was insufficient proof regarding a lack of private and professional character; or (3) that some other "grave reason" makes reciprocal discipline inconsistent with principles of right and justice. *Selling v. Radford*, 243 U.S. at 51.[2]

<u>Failure to Supply the Record of the Florida Disciplinary Proceedings</u>

To properly assess Mr. Harper's constitutional claims, we must know what was said and done in the Florida proceedings. And to know what was said and done, we need the record of the Florida disciplinary proceedings.

That record was to be supplied by Mr. Harper. *See In re Williams*, 398 F.3d 116, 119 (1st Cir. 2005) (per curiam) (in matters involving reciprocal discipline, the respondent attorney bears the burden to ensure that the entire disciplinary record is furnished to the court in a timely manner). But Mr. Harper has not furnished us with this record; as a result, we are unable to determine what took place in the Florida proceedings.

Ordinarily, the failure to supply an adequate record is fatal to an appeal. *See Scott v. Hern*, 216 F.3d 897, 912 (10th Cir. 2000) ("Where the record is insufficient to permit review we must affirm." (citations omitted)); *see also In re Barach*, 540 F.3d 82, 84 n.1 (1st Cir. 2008) (per curiam) (in matters involving reciprocal discipline, the court can assume that the disciplinary record supports the state court's findings when the attorney fails to provide the federal court with the record of the state disciplinary proceedings). But even if we were to accept Mr. Harper's version of events, we would affirm based on the absence of a constitutional violation.

---

[2]    The federal district court provides similar requirements for reciprocal discipline. *See* D.C. COLO. LCvR 83.3(F).

5

Due Process Claims Regarding the Florida Disciplinary Proceedings

Mr. Harper contends that the Florida Supreme Court's disciplinary decision resulted in a deprivation of procedural due process in seven ways: (1) departure from state procedural rules, (2) exclusion of a document, (3) partiality of the referees, (4) rigging of the grievance committee, (5) fraudulent submission of the referee's report, (6) denial of review in the Florida Supreme Court, and (7) insufficiency of the evidence. The federal district court properly rejected these contentions.

I.     Right to Due Process

Although attorneys facing disciplinary proceedings are entitled to procedural due process, they do not enjoy "the full panoply of rights afforded to an accused in a criminal case." *Razatos v. Colo. Supreme Court*, 746 F.2d 1429, 1435 (10th Cir. 1984) (citation omitted). In this context, the phrase "due process" means notice and a fair opportunity for attorneys to present their cases. *In re Phelps*, 637 F.2d 171, 176 (10th Cir. 1981).

II.     Alleged Due Process Violations

Mr. Harper had the required notice and opportunity to present his case in the Florida proceedings. As a result, we reject the due process claims.

A.     Departure from the State Procedural Rules

According to Mr. Harper, Florida authorities deviated from state disciplinary rules. For instance, Mr. Harper argues that his hearing should have been conducted in a different county, the referees were not properly appointed, the Florida complaint was improperly styled, there was not an index to the complaint, and the State's submission of

6

costs was premature. Even if we were to accept these contentions as true, the violation of internal rules would not have deprived Mr. Harper of the right to notice or an opportunity to present his case. As a result, we reject Mr. Harper's due process claim based on deviation from the State's internal rules. *See In re Phelps*, 637 F.3d 171, 176 (10th Cir. 1981).

B.  Deprivation of Due Process through Exclusion of a Document

Mr. Harper also contends that his due process rights were violated when the referee refused to allow him to use a particular document while allowing the State to use other documents over his objections. We are not persuaded. Tribunals have broad discretion to admit or refuse to admit evidence into the record on a number of grounds, including relevance, privilege, and undue prejudice. *See, e.g.*, *United States v. Scheffer*, 523 U.S. 303, 328 (1998). Mr. Harper does not explain how the referee's rulings prevented a fair opportunity to present a defense. Without that information, we reject Mr. Harper's contention.

C.  Challenges to the Objectivity of the Referees

Because one referee recused, a second referee made the eventual findings. Mr. Harper argues that both referees were biased, and we reject this argument.

According to Mr. Harper, the original referee was biased in favor of the Florida Bar. But this referee recused. As a result, the referee's alleged bias would not have hurt Mr. Harper.

7

He also alleges bias on the part of the successor referee. According to Mr. Harper, this referee was disqualified under Florida Statute § 38.10 and Canon 3E(1) of Florida's Judicial Code. We disagree because the statute and canon do not apply.

Florida Statute § 38.10 is inapplicable, for it deals with disqualification of trial judges rather than referees presiding over attorney disciplinary proceedings. *See* FLA. STAT. § 38.10 (1995).

Similarly, Canon 3E(1) does not apply. This canon requires judges to disqualify themselves whenever their impartiality "might reasonably be questioned." FLA. STAT., CODE OF JUDICIAL CONDUCT, Canon 3E(1). But Mr. Harper has not provided a reasonable basis to question the referee's impartiality. And we cannot declare a due process violation based solely on Mr. Harper's "subjective impressions of bias or prejudice, no matter how vehemently expressed." *In re Cordova-Gonzalez*, 996 F.2d 1334, 1336 (1st Cir. 1993).

Because Florida Statute § 38.10 and Canon 3E(1) do not apply, we reject Mr. Harper's allegation regarding bias of the second referee.

D.     Rigging of the Grievance Committee

Mr. Harper also contends that the grievance committee was "rigged" to find probable cause. But Mr. Harper has not pointed to any evidence for this contention, and we cannot reverse based solely on his suspicion about the selection of individuals to serve on the grievance committee. *See Withrow v. Larkin*, 421 U.S. 35, 54-55 (1975) (rejecting

8

a claim of bias because the challenger did not present a specific foundation to suspect prejudice on the part of the disciplinary board).

E.  Challenges to the Referee's Report

According to Mr. Harper, the referee's report is fraudulent because it adopts the report of the Florida Bar.  But even if the referee had simply adopted the Bar's report, the adoption would not have violated Mr. Harper's right to due process.  *See In re Sibley*, 564 F.3d 1335, 1341 (D.C. Cir. 2009) (holding that the referee's adoption of the bar's report did not deprive the attorney of due process under *Selling*); *see also People v. Harper*, 294 P.3d 161, 167, 167 nn.47, 51 (Colo. Office of the Presiding Disciplinary Judge 2012) (rejecting the same claim by Mr. Harper in another case involving reciprocal discipline based on his 91-day suspension by the Florida Supreme Court).

F.  Denial of Review by the Florida Supreme Court

Mr. Harper argues that the Florida Supreme Court fraudulently disallowed oral argument and refused to explain how the court had reviewed the case.  These arguments are meritless, for Mr. Harper had no right to oral argument and we must take the court at its word when it said it had reviewed the case.

According to Mr. Harper, he was entitled to oral argument under Rule 3-7.7(a)(2) of the Rules Regulating the Florida Bar.  This rule provides that "[t]he Supreme Court of Florida shall review all reports and judgments of referees recommending . . . suspension."  The rule does not say that "review" includes a right to oral argument.  Subsection (c), entitled "Procedure for Review," provides that a party may "request" oral argument in his

9

petition for review. Rules Regulating the Florida Bar, Rule 3-7.7(c). But the rule does not guarantee oral argument. Thus, we reject Mr. Harper's claim that the Bar rules entitled him to oral argument.

Mr. Harper characterizes the Florida Supreme Court's order as "fraudulent" by disregarding his request for oral argument and refusing to explain how it had reviewed his case. This characterization is unsupportable.

Tribunals frequently decline oral argument and decide cases on the record. *See, e.g.*, FED. R. APP. P. 34(a)(2) (providing for the disposition of federal appeals without oral argument). This practice does not suggest fraud.

The same is true of Mr. Harper's suggestion of fraud based on the Florida Supreme Court's refusal to state how it had reviewed the case. The court said it would adopt the referee's report and recommendation and deny Mr. Harper's petition for review and his later motion for reconsideration. We see little reason to call these statements "fraudulent." Mr. Harper may not like what the court did or how it decided what to do, but the court did precisely what it said it was doing: denying Mr. Harper's petition for review and motion for reconsideration. That action was not fraudulent.

G.      Sufficiency of the Evidence

Mr. Harper argues that the referee's report conflicts with the evidence. The alleged conflict involves the closeness of the relationship between two of the judges who had complained about Mr. Harper. He does not furnish the transcript, but purports to quote an excerpt in which one judge said he knew the other judge.

10

Evidence from another disciplinary proceeding is insufficient under *Selling* only if it is so infirm "as to give rise to a clear conviction on [the district court's] part that [it] could not . . . accept" the state court's decision. *Selling v. Radford*, 243 U.S. 46, 51 (1917). Mr. Harper's quoted excerpt does not suggest an infirmity in the evidence supporting the court's findings. Instead, the excerpt refers to the level of familiarity between two of the complaining judges. As a result, we reject Mr. Harper's contention that the referee's findings conflicted with the evidence.

Other Constitutional Claims

Mr. Harper invokes not only his right to due process, but also his rights to confront adverse witnesses and to speak freely. These rights arguably fall outside the limited constitutional protections in *Selling*. But we can assume for the sake of argument that the Colorado proceedings triggered Mr. Harper's rights to confrontation and free speech. Even with this assumption, however, we would reject Mr. Harper's claims.

I.      Right to Confrontation

According to Mr. Harper, the referee disallowed confrontation of witnesses by quashing the subpoenas of key witnesses and cutting off the questioning of others. This argument is unpersuasive.

Courts are divided over the applicability of the right to confrontation in disciplinary proceedings. *Compare In re Sibley*, 564 F.3d 1335, 1341 (D.C. Cir. 2009) (holding that the right to confrontation does not apply in attorney disciplinary proceedings), *In re Stamps,* 173 F. App'x 316, 318 (5th Cir. 2006) (per curiam)

11

(unpublished op.) (stating that the right to confrontation of witnesses does not apply in attorney disbarment proceedings), *In re Marzocco*, No. 98-3960, 1999 WL 968945, at *1 (6th Cir. Sept. 28, 1999) (unpublished op.) ("The Confrontation Clause does not apply to a disbarment case." (citation omitted)), *and Rosenthal v. Justices of the Supreme Court of Cal.*, 910 F.2d 561, 565 (9th Cir. 1990) (stating that the confrontation clause "does not apply to a disbarment case"), *with In re Peters*, 642 F.3d 381, 385 (2d Cir. 2011) (per curiam) (holding that the right to confrontation applies in attorney disciplinary proceedings). This question remains open in our circuit. *Cf. Peretti v. Nat'l Transp. Safety Bd. F.A.A.*, No 92-9562, 1993 WL 261883, at *1 (10th Cir. July 1, 1993) (unpublished op.) (stating that the right to confrontation does not apply to disciplinary proceedings involving pilot certification).

We need not answer the question today. Even if Mr. Harper were entitled to confront witnesses, he has not presented any evidence showing that this right was denied. As noted above, Mr. Harper has not furnished us with the transcript of the disciplinary hearing. But even in his brief, Mr. Harper does not deny that he had an opportunity to call and cross-examine witnesses.

The Sixth Amendment provides a right to confrontation, but trial judges can still impose reasonable limits on cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). These limits include relevance and materiality. *See United States v. Solomon*, 399 F.3d 1231, 1239 (10th Cir. 2005) ("a criminal defendant does not have a constitutional right to present evidence that is not relevant and not material to his

12

defense" (citations omitted)). Thus, unless the desired testimony was "relevant and material," the rulings could not have violated Mr. Harper's constitutional right to confront adverse witnesses. *See United States v. Raineri*, 670 F.2d 702, 713 (7th Cir. 1982) ("Unless [the proposed witness] would have produced relevant and material testimony which favored the defendant, the quashing of the subpoena could not have violated the defendant's right to call witnesses in his favor." (citation omitted)).

Mr. Harper says that he could have questioned the original chairperson of the grievance committee[3] and two investigators to learn what they had done before the committee found probable cause. Though Mr. Harper focuses on the earlier finding of probable cause, he does not suggest that the proposed witnesses would have testified favorably on the underlying allegations of professional misconduct. In these circumstances, Mr. Harper has not identified anything in the proposed testimony that suggests a violation of his right to confront adverse witnesses. *See In re Fletcher*, 424 F.3d 783, 794-95 (8th Cir. 2005) (holding that the federal district court did not deprive an attorney of due process when it prohibited him from deposing two judges that had made disciplinary complaints); *In re Bailey*, 182 F.3d 860, 872-73 (Fed. Cir. 1999) (rejecting a contention that the disciplinary committee had been biased, reasoning that the court later made its own disciplinary decision independently of the committee).

---

[3]    The Florida Bar can only file a complaint if probable cause is found by the grievance committee or the Board of Governors. Rules Regulating the Florida Bar, Rule 3-3.2(b)(1).

II.    <u>Right to Free Speech</u>

Though Mr. Harper invokes the First Amendment, his claim is unclear.  He seems to argue that the suspension constituted a penalty for action protected under the First Amendment.  If this is Mr. Harper's argument, it would be meritless because the First Amendment does not protect the filing of frivolous motions.  *See United States v. Ambort*, 405 F.3d 1109, 1117 (10th Cir. 2005) (the First Amendment does not protect "knowingly fraudulent or frivolous claims"); *see also Wolfe v. George*, 486 F.3d 1120, 1125 (9th Cir. 2007) ("there is no constitutional right to file frivolous litigation" (footnote omitted)).

<u>Evidentiary Hearing</u>

Mr. Harper asserts that Local Rule 83.5 requires an evidentiary hearing.  This argument was rejected by the federal district court.  There the court reasoned that Rule 83.5 does not apply to proceedings based on reciprocal discipline.  We have said that "[w]e will not second-guess the district court's interpretation of its own [disciplinary] rules."  *Mattox v. Disciplinary Panel*, 758 F.2d 1362, 1365 (10th Cir. 1985); *see also In re McCullough*, 688 F.3d 906, 907 (8th Cir. 2012) (per curiam) (rejecting a similar claim, based on the federal district court's local rules, that the attorney was entitled to an evidentiary hearing in a matter involving reciprocal discipline).  In following this language, we decline to second-guess the federal district court's decision to proceed without an evidentiary hearing.

Conclusion

In suspending Mr. Harper based on the Florida order, the federal district court complied with *Selling* by examining the Florida proceedings to ensure they provided due process, provided findings supported by the evidence, and avoided a grave injustice. And in the Florida proceedings, Mr. Harper was able to confront adverse witnesses and exercise his right to free speech. As a result, we affirm the federal district court's order of reciprocal discipline.