**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LOGAN ADAM DEATON,

       Petitioner - Appellant,

v.

JIM FARRIS, Warden,

       Respondent - Appellee.

No. 16-6204
(D.C. No. 5:13-CV-01052-R)
(W.D. Oklahoma)

**ORDER DENYING
CERTIFICATE OF APPEALABILITY**[*]

Before **BRISCOE**, **GORSUCH,** and **McHUGH**, Circuit Judges.

Logan Adam Deaton, an Oklahoma state prisoner proceeding *pro se*, applies for a certificate of appealability (COA) to challenge the district court's order denying his motion for writ of habeas corpus brought under 28 U.S.C. § 2254. He also seeks permission to proceed *in forma pauperis* (IFP). Exercising jurisdiction under 28 U.S.C. § 1291, we deny Mr. Deaton's application for a COA and dismiss the appeal. In addition, we grant his motion to proceed IFP.

---

[*]This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule Appellate Procedure 32.1 and 10th Circuit Rule 32.1.

**BACKGROUND**

On December 4, 2008, a jury found Mr. Deaton guilty of First Degree Rape, and the trial court sentenced him to twenty-five years' imprisonment. The Oklahoma Court of Criminal Appeals (OCCA) affirmed Mr. Deaton's conviction on direct appeal in a decision entered on September 22, 2010.

On May 6, 2011, Mr. Deaton filed an Application for Post-Conviction Relief. On February 15, 2012, the state trial court denied Mr. Deaton's claims for relief, with the sole exception that it granted him an evidentiary hearing on a claim based on newly discovered evidence. But after conducting that hearing on April 5, 2012, the state trial court denied relief on that claim as well, on July 13, 2012. The OCCA affirmed the state trial court's denial of post-conviction relief on June 6, 2013.

On October 2, 2013, Mr. Deaton filed a *pro se* application for a writ of habeas corpus in the federal district court under 28 U.S.C. § 2254. Mr. Deaton subsequently amended the application, raising nine claims: (1) prosecutorial misconduct deprived him of a fundamentally fair trial; (2) the state trial court deprived him of the right to present a defense by limiting cross-examination of the victim; (3) admission of unduly prejudicial photographs deprived him of a fundamentally fair trial; (4) failure to properly instruct the jury on the elements of rape deprived him of a fair trial; (5) judicial misconduct deprived him of a fair trial; (6) trial counsel performed ineffectively by failing to seek a change in venue; (7) appellate counsel performed deficiently on direct appeal by failing to raise an ineffective assistance of trial counsel claim based on the decision to call Mr. Deaton as a witness in his own defense; (8) newly discovered evidence requires reversal of his

2

conviction; and (9) appellate counsel performed ineffectively by failing to raise certain unidentified issues on direct appeal. The district court ordered the state to file a response, which the state filed on March 21, 2014. The district court then referred the matter to the magistrate judge for initial review.

The magistrate judge issued a thirty-two page Report and Recommendation (R&R), suggesting that the application be denied on the merits on all claims. The R&R first determined that all nine claims in the application had been fully exhausted, either on direct appeal or post-conviction proceedings in the state court. The R&R then considered the merits of each claim and concluded that Mr. Deaton had failed to demonstrate that the OCCA had made determinations on the issues that were contrary to or an unreasonable application of federal law. The district court adopted the R&R and accordingly denied Mr. Deaton's application for habeas relief, and it entered final judgment on June 21, 2016. Neither the district court order nor the judgment address whether Mr. Deaton is entitled to a COA. On appeal, Mr. Deaton has abandoned his third claim—that the admission of unduly prejudicial photographs deprived him of a fundamentally fair trial— but he seeks a COA on all his other claims.

## DISCUSSION

To appeal from the district court's denial of habeas relief under 28 U.S.C. § 2254, Mr. Deaton must first obtain a COA from this court. *See* 28 U.S.C. § 2253(c)(1)(A) (providing that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court"). And we will issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To meet that burden, Mr. Deaton must establish that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (internal quotation marks omitted). Applying that standard to each of Mr. Deaton's claims, we conclude that he cannot meet that burden. Accordingly, we deny his request for a COA and dismiss this appeal.

### A. *Prosecutorial Misconduct*

Mr. Deaton identifies three separate bases for his claim of prosecutorial misconduct. First, he contends that the state prosecutor introduced evidence of a prior felony conviction that the state trial court had ruled inadmissible in a pre-trial ruling in limine. Second, he argues that the prosecutor improperly appealed to the jury's sympathy for the victim during closing argument. And third, he argues it was prosecutorial misconduct for the state prosecutor to "consol[e] the alleged victim and then parade[] her in front of the jury." In a summary opinion on direct appeal, the OCCA disagreed,

4

holding that the state "trial court's admonitions to the jury cured the alleged errors" and their cumulative effect did not deprive Mr. Deaton of a fair trial. On habeas review, the magistrate judge considered the same issues in the R&R, albeit in more depth, and concluded Mr. Deaton had failed to demonstrate that the OCCA's determination was contrary to or an unreasonable application of clearly established federal law.

In seeking a COA from this court, Mr. Deaton claims that "[t]his conduct, when viewed in the whole, completely prejudiced the Petitioner, denied him a fair trial, and the District court's decis[]ion to the contrary is unreasonable." We disagree. Petitioners claiming a violation of their constitutional right to a fair trial must show that the prosecution's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). This requires an "examination of the entire proceedings" in the case, *id.*, and the court must take "notice of all the surrounding circumstances, including the strength of the state's case." *Patton v. Mullin*, 425 F.3d 788, 811 (10th Cir. 2005).

First, as to the prosecution's question regarding Mr. Deaton's prior child abuse conviction, there is a lingering question whether it was even inappropriate, given that (1) Mr. Deaton placed his credibility at issue, and (2) the state trial court ruled in a post-trial motion that "the State was entitled to impeach with th[e] prior conviction." Moreover, Mr. Deaton never responded to the question, and the trial court felt a curative instruction would suffice—a determination which is entitled to "special respect." *Arizona v. Washington*, 434 U.S. 497, 510 (1978). In seeking a COA from this court, Mr. Deaton argues that "common sense makes us aware that the jury heard this information and what

5

they heard cannot simply be unheard." But he fails to explain why the evidence was inadmissible, or to demonstrate any prejudice after the curative instruction was given, which is particularly problematic in light of this court's recognition that "juries are presumed to follow curative instructions." *United States v. Morgan*, 748 F.3d 1024, 1042 (10th Cir. 2014).

Second, Mr. Deaton claims the prosecutor's comments during closing arguments were improper because they "not only appealed to the sympathy of the alleged victim, but these same comments were poised in such a way as to be presented as personal beliefs of guilt by the State." Specifically, the prosecutor commented that the victim required counseling and that the jury should consider a minimum of 25 years on each count. But, as the magistrate judge explained, the defense never objected, and these comments were a limited, and reasonable, response to the defense attorney's own call to sympathy for Mr. Deaton. Defense counsel argued in closing that Mr. Deaton was just a "youngster," that if found guilty Mr. Deaton would have to live in a cell the size of a bathroom, and that Mr. Deaton would have to register as a sex offender with that "scarlet letter the rest of [his] life." *See Matthews v. Workman*, 577 F.3d 1175, 1189 (10th Cir. 2009) ("[I]f the prosecutor's remarks were 'invited,' and did no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction." (quoting *United States v. Young*, 470 U.S. 1, 13 (1985))).

And finally, Mr. Deaton claims the prosecution "paraded [the victim] in front of the jury" in the hallway during a break in the trial in an attempt to gain the jurors' sympathy. The prosecution did lead the victim to a sheltered area of the hallway during

6

the break, but Mr. Deaton has presented no evidence that any juror actually saw this occur. And even assuming the jurors did see it occur, the trial court gave a sufficient curative instruction, and Mr. Deaton has not demonstrated how this isolated incident rendered his trial fundamentally unfair.

In sum, reasonable jurists could not debate that the petition should have been resolved differently on this issue. Mr. Deaton has failed to demonstrate how the prosecution's conduct prejudiced the outcome of the trial, especially in light of the defense's own comments and the state trial court's curative instructions. Because Mr. Deaton has failed to make a substantial showing of the denial of a constitutional right, we deny a COA on this claim.

## B. *Sixth Amendment Confrontation Clause*

Next, Mr. Deaton argues that the trial court "prevent[ed] the defense from eliciting information from the alleged victim concerning her mental state after the alleged crime," in violation of his Sixth Amendment right to confrontation. "The Sixth Amendment provides a right to confrontation, but trial judges can still impose reasonable limits on cross-examination." *In re Harper*, 725 F.3d 1253, 1260 (10th Cir. 2013) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). As the magistrate judge acknowledged, "[t]hese limits include relevance and materiality." *Id*. Mr. Deaton claims the trial court erroneously precluded the defense from asking about the victim's mental state and substance abuse in the time period after the alleged rape, including the fact that she had been admitted to a mental institution. The OCCA considered this claim on direct appeal and summarily concluded the state trial court did not abuse its discretion in limiting the

7

cross-examination. On habeas review, the magistrate judge rejected the claim, noting that Mr. Deaton was allowed to question the victim regarding many subjects bearing on her state of mind, including her prior substance abuse, self-harm, and mental illness.

In seeking a COA, Mr. Deaton cursorily concludes that the questioning was relevant, but he fails to cite to any legal precedent or other authority suggestive that the state trial court's limitations constituted an abuse of discretion, much less that they violated his Sixth Amendment right to confrontation. We therefore deny a COA on this claim.

## C. *Jury Instructions*

Mr. Deaton's third claim is that the state trial court did not properly instruct the jury on the elements of the crime of rape. Specifically, he argues "[t]he instruction given by the state court allowed the jury to find the Petitioner guilty of rape where 'force, and violence was used against the victim," but that the instruction should have "include[d] the element of consent." On direct appeal, the OCCA determined that "the giving of the Uniform Instructions on the elements of rape was sufficient to encompass [Mr. Deaton's] proffered defense of consent. The elements of rape specifically exclude the possibility that the intercourse was consensual, and the instruction is substantially in the language of the rape statutes." The magistrate judge agreed, concluding that Mr. Deaton was not entitled to habeas relief based on any alleged error in the state trial court's interpretation of state law, and that Mr. Deaton had failed to show that the failure to include a separate element of consent rendered the trial fundamentally unfair.

In seeking a COA from this court, Mr. Deaton again fails to demonstrate how the instruction denied him his right to a fair trial, so we deny a COA on this claim as well. "In habeas proceedings, we have a limited role in evaluating jury instructions. We only look to determine if instructional errors 'had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial in a constitutional sense.'" *White v. Medina*, 464 F. App'x 715, 719 (10th Cir. 2012) (quoting *Shafer v. Stratton*, 906 F.2d 506, 508 (10th Cir. 1990)). As the magistrate judge explained, the instruction in this case required a showing that "force/violence was used against the victim," and should the jury have determined the encounter to be consensual, no force would have been present. *See United States v. Martin*, 528 F.3d 746, 752 (10th Cir. 2008) (noting under a similar federal rape statute that "the government was required to prove that force or serious threat—and therefore not the victim's consent—was the cause of the sex act. This is all the proof of non-consent that the statute demands"). Despite Mr. Deaton's arguments otherwise, the State was not required to tailor the instructions to "the circumstances of the case."

### D. *Judicial Misconduct*

Next, Mr. Deaton casts his prosecutorial misconduct claim in a new light—that is, he claims it was *judicial misconduct* for the state trial court not to declare a mistrial after the prosecution asked Mr. Deaton about his prior child abuse conviction. The state trial court considered this claim during postconviction proceedings, deeming it to be procedurally barred under principles of waiver or res judicata, a ruling from which Mr. Deaton did not appeal. The magistrate judge considered the issue on habeas review,

concluding that "Petitioner's attempt to recast his prosecutorial misconduct claim as an independent claim of judicial misconduct is futile" and that the record did not support a claim of judicial bias. *See McPherson v. Miers*, 7 F. App'x 845, 849 (10th Cir. 2001) ("[A]lleged violations of state codes of conduct are not cognizable in federal habeas." (citing *Estelle v. McGuire*, 502 U.S. 62, 67 (1991))). We agree, and deny a COA on this claim.

### E. *Ineffective Assistance of Trial and Appellate Counsel*

Mr. Deaton also seeks a COA on issues stemming from the alleged ineffective assistance of his trial and appellate counsel. To demonstrate that his Sixth Amendment right to the effective assistance of counsel was violated, Mr. Deaton must show both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668 (1984). And "[t]he very focus of a *Strickland* inquiry regarding performance of appellate counsel is upon the merits of omitted issues." *Milton v. Miller*, 744 F.3d 660, 670 (10th Cir. 2014) (internal quotation marks omitted). In claiming ineffective assistance of trial and appellate counsel, Mr. Deaton raises several arguments. First, he claims his trial counsel failed to seek a change of venue, given that the victim's father is an attorney who regularly appears in the same district where Mr. Deaton's trial was held; Mr. Deaton alleged that the victim's father is corrupt and has close ties with the prosecution and/or the judge, rendering a fair trial impossible. He also claims his appellate counsel was ineffective by not urging on appeal that his trial counsel was ineffective for advising Mr. Deaton to testify, in light of the chance the prior child abuse conviction might come in.

10

And finally, he argues his appellate counsel failed to raise the judicial misconduct claim (discussed above) during the direct appeal.

The OCCA considered these claims during postconviction proceedings, concluding (1) appellate counsel *had* raised the issue of judicial misconduct; and (2) the claims of ineffective assistance of trial counsel did not present issues of "appellate merit," so appellate counsel was not ineffective for failing to raise them on appeal. The magistrate judge reviewed these issues anew, concluding that AEDPA deference was warranted on all claims except for the claim that appellate counsel had failed to raise the issue of judicial misconduct on appeal. In the magistrate judge's view, the determination that judicial misconduct had been raised on direct appeal was not supported by the record, so it reviewed the issue de novo. Nonetheless, the magistrate judge recommended denying all of Mr. Deaton's claims related to the ineffective assistance of counsel. As to the change of venue issue, the judge determined the claim was frivolous because it was premised on pure speculation: Mr. Deaton failed to "support the allegations about the victim's father with any facts." As to trial counsel's advice that Mr. Deaton testify, the judge determined Mr. Deaton failed to show either deficient performance or prejudice, and it cataloged all of the steps trial counsel undertook to prevent the child abuse conviction from coming in. And finally, in reviewing the judicial misconduct claim de novo, the judge determined that the substance of the claim was without merit.

We turn first to the claim that trial counsel was ineffective for advising Mr. Deaton to testify. In seeking a COA, Mr. Deaton claims his attorney did not understand the law and directed his client in the wrong direction. Moreover, he claims prejudice is

11

clear because the case came down to a credibility contest, and the child abuse allegation "certainly would tip the scales toward a verdict of guilt." But as the magistrate judge aptly explained, counsel was careful in seeking a pretrial in limine ruling before advising Mr. Deaton to testify, and counsel fought strenuously thereafter by objecting to the prosecutor's question and by seeking a mistrial. And as to prejudice, Mr. Deaton fails to demonstrate how the result of the proceeding would have been different had trial counsel not advised him to testify, which is a particularly glaring omission in light of Mr. Deaton's concession that it all "came down to a credibility contest." Instead of addressing the potential of a different outcome had he not testified, Mr. Deaton merely reiterates that it was error for the prior conviction to be admitted—a claim we have addressed and rejected above.

As to Mr. Deaton's ineffective assistance of appellate counsel claims, Mr. Deaton fails to even remotely address the substance of the claims in his application for a COA. He claims only that "should this court find merit in the omitted claims, [then ineffective assistance of appellate counsel] should and must be found." Regardless, we agree with the magistrate judge that Mr. Deaton's judicial misconduct claim is without merit and that his venue claim is without any factual support. Accordingly, Mr. Deaton has failed to make a substantial showing of the denial of a constitutional right, and we therefore deny a COA on all of his ineffective assistance of counsel claims.

**F.** *Newly Discovered Evidence*

Finally, Mr. Deaton claims there was newly discovered evidence presented during postconviction proceedings that would have altered the outcome of the trial had it been

presented. In essence, he raises a standalone actual innocence claim. But the Supreme Court has concluded that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *Case v. Hatch*, 731 F.3d 1015, 1036 (10th Cir. 2013) ("[A]s yet, it is an open question whether such a federal right exists."). The magistrate judge flagged this problem in recommending denial of Mr. Deaton's habeas petition, but Mr. Deaton fails to address the issue in his application for a COA before this court. He does not tie his actual innocence claim to ineffective assistance of counsel or some other constitutional challenge.

Moreover, even were we to consider the evidence, we agree with the magistrate judge that it was cumulative evidence of impeachment. Mr. Deaton claims the testimony of two witnesses—Nicole Gregory and Alice Katona—suggested he was innocent. Ryan Gregory—Nicole's brother—shared an apartment with the victim. Reportedly, the victim told Ms. Gregory that Ryan Gregory had raped her on a previous occasion, and Ms. Gregory testified she thought her brother had again raped the victim on the night in question. She also challenged the victim's credibility, claiming the victim's allegations of rape were "just happening way too much. Everyone is forcing her to have sex with them." But the victim never told Ms. Gregory that Mr. Deaton did not rape her on the night in question.

Alice Katona, who is the grandmother of Ryan Gregory and Mr. Deaton, also testified. She claimed Ryan Gregory had admitted to beating up the victim on the night in

13

question and that she had heard about Ryan Gregory's violence toward the victim and the victim's substance abuse problems. At no time did Ryan Gregory admit to raping the victim.

Even were we to credit the witnesses' testimony, "[t]he evidence which [Mr. Deaton] asserts as newly discovered evidence barely aids his case and is merely impeaching evidence that would not cause a rational person to doubt [his] guilt." *Clayton v. Gibson*, 199 F.3d 1162, 1180 (10th Cir. 1999), *holding modified by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001). We therefore deny a COA on Mr. Deaton's actual innocence claim.

### G. *IFP Status*

As a final matter, Mr. Deaton has filed a motion to proceed IFP on appeal. Prisoners seeking IFP status in a habeas action must demonstrate "a financial inability to pay the required fees and the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues raised on appeal." *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 812 (10th Cir. 1997). We agree that Mr. Deaton has demonstrated a financial inability to pay and that his arguments are not frivolous. Accordingly, Mr. Deaton's motion to proceed IFP on appeal is granted.

**CONCLUSION**

Because Mr. Deaton fails to make a substantial showing of the denial of a constitutional right, we DENY his request for a COA and DISMISS the appeal. We also GRANT Mr. Deaton's motion to proceed IFP on appeal.

Entered for the Court


Carolyn B. McHugh
Circuit Judge