No. 96-1744

United States of America,                    *
                                             *
      Appellee,                              *
                                             *   Appeal from the United States
        v.        *                          District Court for the
                                             *     District  of  South  Dakota.
Quincey Jones,                               *
                                             *
        Appellant.                           *


                     Submitted:  October 25, 1996

                        Filed:  January 8, 1997


Before BOWMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and MORRIS
      SHEPPARD ARNOLD, Circuit Judge.


MORRIS SHEPPARD ARNOLD, Circuit Judge.

      Quincey Jones appeals his 1995 conviction for aggravated sexual abuse
involving the use of force.  See 18 U.S.C. § 2241(a)(1), § 2246(2)(A); see
also 18 U.S.C. § 1153(a).  He argues that the trial court should have
suppressed three statements that he made to law enforcement officers and
that the evidence was insufficient to support his conviction.  We affirm
the judgment of the trial court.[1]


                                    I.

      Mr. Jones made three statements to law enforcement officers -- one
to a tribal investigator (the events took place in Indian

_____

      [1]The Honorable Charles B. Kornmann, United States District
Judge for the District of South Dakota.

country) and two to an FBI agent. Each time, he signed an "advice of rights" form and waived his right to have a lawyer present. Because it is not completely clear from Mr. Jones's brief whether his objection is to the admission of one, two, or all three of the statements, we consider each in turn.

Mr. Jones made the first statement to a tribal investigator two days after his arrest on tribal charges of assault and battery. Mr. Jones was in tribal custody at the time. In that oral statement, which occurred in a taped interview that lasted approximately 15 minutes, Mr. Jones acknowledged having sexual intercourse with the alleged victim but asserted that the encounter was consensual and, in fact, was initiated by the alleged victim. Mr. Jones's objections to that statement seem to be that he had no lawyer to advise him, that a transcript of the interview reflects only part of the questioning because the tribal investigator turned off the tape intermittently, and that the tribal investigator did not advise him that federal (in addition to tribal) charges might be brought against him.

Mr. Jones testified at a suppression hearing, however, that he knew that he was giving up his rights when he talked to the tribal investigator, first that he didn't "recall" if he ever asked for a lawyer and later that he did not do so, that he was aware that the tribal investigator turned off the tape recorder at times, and that the tribal investigator never threatened or abused him in any way. We see nothing in the record to indicate that Mr. Jones's waiver of his right to a lawyer before making a statement to the tribal investigator was anything but voluntary, knowing, and intelligent. See, e.g., Miranda v. Arizona, 384 U.S. 436, 444 (1966). Nor do we see anything to suggest that the statement itself was the product of physical or psychological coercion. See, e.g., id. at 476; see also, e.g., United States v. Jorgensen, 871 F.2d 725, 729 (8th Cir. 1989). Finally, Mr. Jones directs us to no authority requiring

that a tribal investigator pursuing tribal charges must advise a suspect that federal charges might also be brought. The trial court thus committed no error in refusing to suppress this statement.

## II.

Mr. Jones made the second statement to an FBI agent approximately a month after his arrest. Mr. Jones was in tribal custody again, having been held initially for three days on the tribal charges of assault and battery, released on a personal-recognizance bond, and then rearrested 10 days later, apparently for failure to appear in tribal court. The interview with the FBI agent took place three weeks into Mr. Jones's second detention and lasted approximately 100 minutes.

In that oral statement, according to the FBI agent's testimony at trial, Mr. Jones said that at the time of the incident, "his hormones were acting up and ... he felt horny," that "he just walked up" on the alleged victim, and that she "really didn't push him away, so he didn't think she would mind." Mr. Jones further stated, according to the FBI agent, that the alleged victim "dropped her shorts down to her ankles" and that they had consensual sex. The FBI agent testified that he then "pointed out to Mr. Jones ... a number of discrepancies or inconsistencies between the tale he told [the tribal investigator] and the version of events he gave to me." At that point, according to the FBI agent, Mr. Jones asked "how much time he might get if he were convicted of this rape." The FBI agent testified that he asked Mr. Jones if he wanted to change any part of his version of events. According to the FBI agent, Mr. Jones conceded that "he did push her slowly onto the bed," that "she said, don't," and that "she was crying when she left." Mr. Jones's objection to that statement seems to be that he had been in tribal custody for three weeks at that point without having been taken before a judge.

-3-

Mr. Jones testified at a suppression hearing, however, that he did not ask for a lawyer even though he knew that he had the right to have one and that the FBI agent never threatened him, made promises to him, or raised his voice. We see nothing in the record to suggest any involuntary waiver by Mr. Jones of the right to a lawyer before talking with the FBI agent. See, e.g., Miranda v. Arizona, 384 U.S. 436, 444 (1966). Nor is there anything to indicate that Mr. Jones's statement to the FBI agent was the result of physical or psychological coercion. See, e.g., id. at 476; see also United States v. Jorgensen, 871 F.2d 725, 729 (8th Cir. 1989). Although Mr. Jones's detention in tribal custody for at least three weeks without being brought before a judge is somewhat troubling to us, Mr. Jones presented no evidence that its effects were so intimidating or oppressive as to have rendered suspect either his waiver of the right to a lawyer or the voluntariness of his statement to the FBI agent. The trial court thus did not err in refusing to suppress this statement.

### III.

Mr. Jones made an additional statement to the FBI agent approximately two months after his arrest. At that time, he was in federal custody based on a federal indictment for aggravated sexual abuse (the case currently before us). By then, he had been in tribal custody for three days after arrest, released for 10 days, held again in tribal custody for 27 days, taken before a tribal judge and released on bond, rearrested a few hours later (apparently for failure to post the bond), and held in tribal custody for five more days, when he posted the bond. Mr. Jones was free on tribal bond for nearly three weeks before his arrest on the federal charges.

The tribal investigator made the arrest on the federal charges and agreed to transport Mr. Jones to a pickup point where the FBI agent could take custody of him. After the exchange, the FBI agent

took Mr. Jones to the county jail. Mr. Jones's second interview with the FBI agent took place there in the presence of a second FBI agent and lasted about 100 minutes.

In that interview, Mr. Jones made an oral statement that the first FBI agent summarized in writing. Mr. Jones then signed that written statement, which confesses to having "sexual intercourse with [the alleged victim] against her will." According to the statement, "[s]he told me to stop, and she said don't," and "[s]he was crying and upset ... [when she] ran ... out of the house." Mr. Jones's objections to that statement seem to be that he never saw a lawyer during the 32 days that he was in tribal custody, that he asked the tribal investigator for a lawyer on the way to meet the first FBI agent, that he told the first FBI agent that he would rather have a lawyer before signing the "advice of rights" form, that the first FBI agent told him that "it was procedure and everybody usually signed it," and that he signed the written statement only because the first FBI agent offered to testify for him and implied that he would get a more severe sentence if he did not confess.

Mr. Jones testified at a suppression hearing, however, that he signed the "advice of rights" form both when the first FBI agent picked him up and at the jail (about 45 minutes later), that the first FBI agent tried to explain his right to a lawyer at the jail but that he "told [the first FBI agent] that ... he already read them so ... he didn't have to read them again," that neither of the FBI agents threatened him, that he "agreed to participate in an interview" with the FBI agents at the jail, that the first FBI agent had him read aloud the written statement, that the first FBI agent gave him the opportunity to change or strike through anything in the written statement that was incorrect and he did not do either, that he knew he "had the right to have a lawyer present but ... never asked for one," and that neither of the two FBI agents

-5-

ever abused him in any way.  Mr. Jones further testified at the suppression hearing that he was a high school graduate who could "read and write English just fine."

In our view, the record does not support Mr. Jones's contention that his waiver of the right to a lawyer before making an additional statement to the first FBI agent was involuntary under the law.  See, e.g., Miranda v. Arizona, 384 U.S. 436, 444 (1966).  Nor do we believe that the record could support a finding that the written statement that he signed was a consequence of physical or psychological coercion.  See, e.g., id. at 476; see also United States v. Jorgensen, 871 F.2d 725, 729 (8th Cir. 1989).  The trial court thus did not err in refusing to suppress this statement.

IV.

Finally, Mr. Jones asserts that the evidence of force is insufficient to sustain his conviction.  He relies primarily on various inconsistencies in the testimony of some witnesses, including the alleged victim, and on the examining doctor's testimony that there was no evidence of bruising or trauma and that the alleged victim seemed calm during a rape examination on the night of the incident.

The alleged victim testified that on the night of the incident the defendant "grabbed [her] upper arms ... and ... was trying to kiss [her] but [she] was moving [her] head side to side so that he wouldn't kiss [her]," that she "told him not to do that," and that the defendant "was moving [her] back slowly ... towards the bed, hanging onto [her] arms" until she "couldn't move no more and then we fell on the bed."  She further testified that at that point, his upper body was "on [her] ... and he had one leg between [hers] ... [and] was holding [her] with one arm."  She stated that she was "trying to push the defendant off [her]" but was unable to do so.

-6-

She then testified that while "he was pulling [her shorts and her underwear] off [her]" so that they were "[b]elow [her] butt," she "was telling him to stop, ... saying not to do that." Finally, she said, "He got between my legs, he got between my legs and I kept closing them and I was pushing him. He got his penis in [my vagina] one time." The alleged victim also testified that when she ran from the house and jumped into a friend's car, she was crying. She stated that although she had no bruises that night, she developed bruising on her upper left arm the next day. She testified that she could not resist "with [her] full strength" at the time because she was "pretty drunk" on malt liquor and beer and expressed her opinion that she was "doing everything [she] could under the circumstances to get away."

"Force" is not specifically defined in the statute. See 18 U.S.C. § 2246. Our court has held, however, that the amount of force required under the statute need be only "`restraint ... sufficient that the other person could not escape the sexual contact.'" United States v. Fire Thunder, 908 F.2d 272, 274 (8th Cir. 1990), quoting United States v. Lauck, 905 F.2d 15, 18 (2d Cir. 1990). We believe that the alleged victim's testimony about the defendant's grabbing and holding her arms and placing his upper body on top of her, her inability to push him off her, and her opinion that she was doing everything possible to resist under the circumstances is sufficient to sustain the jury's finding that the defendant committed aggravated sexual abuse involving the use of force.

V.

Judge Heaney indicates in his dissent his belief that the jury was instructed incorrectly on the law applicable to this case and, moreover, that the instructional error requires us to reverse the conviction. We respectfully disagree.

In the first place, the alleged instructional error was neither objected to at trial nor raised in Mr. Jones's brief, and even when called to the attention of Mr. Jones's lawyer at oral argument, it was not adopted, much less pursued. In such circumstances, it would be unusual, to say the least, for us to notice the error. See, e.g., United States v. Olano, 507 U.S. 725, 732, 736-37, 741 (1993), and McIntyre v. United States, 380 F.2d 822, 825 n.1 (8th Cir. 1967), cert. denied, 389 U.S. 992 (1967); see also United States v. Atkinson, 297 U.S. 157, 160 (1936), and 3A C. Wright, Federal Practice and Procedure: Criminal 2d § 856 at 338 (1982). Even if we were to notice it, we would do so only if the error were plain. We are not sure that this error is plain, given the complexity of the statutes applicable to these kinds of offenses. It was not plain to the district judge, or to Mr. Jones's lawyer, either at trial, in the appellate brief, or at oral argument.

Even if the error were plain, moreover, we do not believe that it requires that the case be retried. We respectfully disagree with Judge Heaney that the instruction allowed the defendant to be convicted simply on a finding of non-consensual sexual activity. There is nothing in the instruction that would allow such a conviction. The instruction allows a conviction only if the sexual act was "accomplished against the will of [the victim] by the use of force, coercion, or threats." It is true that the reference to threats was erroneously included, but, even so, the mere fact that the victim did not consent could not possibly lead to a conviction under the proper application of this instruction, because the act had to be accomplished by tortious means. Mere lack of consent nowhere appears as a basis for finding Mr. Jones guilty of the offense charged.

While the inclusion of threats as a basis for conviction was error, we are satisfied that the error was harmless, because the

-8-

relevant evidence, all of which we have outlined above, had to do with physical force, not threats. We believe, therefore, that it is not possible that the jury based its verdict on the part of the jury instruction that was infirm. In other words, "the guilty verdict actually rendered in <u>this</u> trial was surely unattributable to the error" (emphasis in original). <u>Sullivan v. Louisiana</u>, 508 U.S. 275, 279 (1993).

## VI.

For the reasons stated, we affirm the judgment of the trial court.

HEANEY, Circuit Judge, dissenting.

I cannot join the majority in sustaining Jones' conviction for aggravated sexual abuse and approving his 108-month sentence. The jury was improperly instructed on the element of force--an essential element of the offense charged and the element that elevated the crime to aggravated sexual abuse and mandated the increased sentence. This grave error in the jury instructions deprived Jones of his Fifth and Sixth Amendment rights to have a jury determine his guilt of every element of the crime charged beyond a reasonable doubt. <u>See</u> <u>Sullivan v. Louisiana</u>, 508 U.S. 275, 277-78 (1993). Because it cannot be said that the conviction was surely unattributable to the error, I respectfully dissent.

Jones was charged with aggravated sexual abuse in violation of 18 U.S.C. § 2241(a)(1), which is defined as "knowingly caus[ing] another person to engage in a sexual act <u>by using force against that other person</u>." (Emphasis added.) As our circuit has recognized, "[t]he force requirement of section 2241(a)(1) is met when the `sexual contact resulted from a restraint upon the other person that was sufficient that the other person could not escape the sexual contact.'" <u>United States v. Fire Thunder</u>, 908 F.2d 272,

274 (8th Cir. 1990) (quoting <u>United States v. Lauck</u>, 905 F.2d 15 (2d Cir. 1990)).  Non-consensual sexual acts that do not involve the requisite level of actual force may constitute sexual abuse, as defined by 18 U.S.C. § 2242,[2] but do not rise to the level of aggravated sexual abuse.

At trial, with respect to the element of force, the district court instructed the jury:

> [T]he words "by force" mean that the act of sexual intercourse was accomplished against the will of [the alleged victim] by the use of force, coercion, or threats of immediate bodily harm against the victim accompanied by apparent power of execution.

(Jury Inst. No. 5.)  This instruction is flawed in several respects. Perhaps most importantly, it provides only a circular definition of force: it merely states "by force" means "by the use of force."  Without an adequate definition of force, the jury may

---

[2]One commits sexual abuse, as defined by section 2242 if he or she knowingly,

(1) causes another person to engage in a sexual act by threatening or placing that other person in fear (other than by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping); or

(2) engages in a sexual act with another person if that other person is--

(A) incapable of appraising the nature of the conduct; or

(B) physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act;

or attempts to do so.

18 U.S.C. § 2242.

well have interpreted "by force" to mean simply non-consensual, rather than requiring the use of actual restraint or physical pressure such that the alleged victim could not escape.  Second, the instruction includes the term "coercion," not part of the statutory definition of either aggravated sexual abuse or sexual abuse.  This inclusion may have misled or confused the jury.  Moreover, because the instruction is written in the disjunctive, it permitted the jury to convict Jones of aggravated sexual abuse for mere coercive conduct.  Compounding the potential confusion, the instruction permitted the jury to convict Jones of the aggravated offense for "threats of immediate bodily harm against the victim."  Jones was not charged with either sexual abuse or aggravated sexual abuse involving the use of threats.  See 18 § 2241(a)(2) (aggravated sexual abuse includes use of threats of death, serious bodily injury, or kidnapping); 18 U.S.C. § 2242(1) (sexual abuse includes the use of all other threats).  Even if he had been, threatening or placing the victim in fear other than that someone "will be subjected to death, serious bodily injury, or kidnapping" would only constitute sexual abuse, not aggravated sexual abuse.  Compare 18 U.S.C. § 2241(a)(2) with § 2242(1).  With so many possible incorrect interpretations of the given instruction, we cannot assume that the jury somehow gleaned the only permissible interpretation to support a conviction:  that Jones used actual force "sufficient that the [the victim] could not escape the sexual contact."

Although Jones did not object to the instruction at trial or raise this issue on appeal, the error must not go unaddressed by our court.  As the Supreme Court has long recognized, appellate courts, particularly when reviewing criminal cases, have the authority to notice significant errors sua sponte--to correct those errors that are "obvious" or "otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings."

See <u>United States v. Atkinson</u>, 297 U.S. 157, 160 (1936).  The error in this case rises to that level.

The error was plain under both the clear statutory language of the sexual abuse provisions and the definition of "force" established by this circuit several years before the trial.  Failure to properly instruct the jury on an essential element of the charged offense affected Jones' substantial rights because it deprived him of his Fifth and Sixth Amendment rights to have a jury determine each and every element of the charged offense beyond a reasonable doubt.  <u>Sullivan</u>, 508 U.S. at 277-78.  These constitutional deprivations cannot be considered harmless.  The instruction permitted the jury to convict Jones of aggravated sexual abuse with a finding of only non-consensual sex.  Moreover, the aggravated sexual abuse conviction required the district court to sentence Jones to a term between 108 and 135 months instead of the 70- to 87-month range for sexual abuse.  Although the majority determined that sufficient evidence in the record supports Jones' conviction, that does not end the analysis after an error of this importance has been detected.  Rather, as the Supreme Court has instructed:

> Harmless-error review looks . . . to the basis on which the "jury actually rested its verdict."  The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error.  That must be so, because to hypothesize a guilty verdict that was never in fact rendered--no matter how inescapable the findings to support that verdict might be--would violate the jury-trial guarantee.

<u>Sullivan</u>, 508 U.S. at 279 (citations omitted).

In this case, looking at the instructions as a whole, no other instruction required the jury to make the necessary finding of

force.  Thus, the jury must have rested its verdict on the erroneous instruction.  This court must not substitute its judgment for that of what a properly-instructed jury would conclude.  Under any standard of review, our court should address this instructional error and vacate Jones' conviction.  Accordingly, I dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.