# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-3420
_____

United States of America

*Plaintiff - Appellee*

v.

Dana Lee Cobenais

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: May 12, 2017
Filed: August 22, 2017

_____

Before SMITH, Chief Judge, COLLOTON and KELLY, Circuit Judges.

_____

SMITH, Circuit Judge.

A jury convicted Dana Lee Cobenais of one count of aggravated sexual abuse, in violation of 18 U.S.C. §§ 1151, 1153(a), 2241(a)(l), 2246(2)(A), and 2246(2)(C). On appeal, Cobenais argues that the theory-of-defense jury instruction mentioning consent inaccurately stated the elements of the offense and the defense theory of the case. He also argues that the district court improperly curtailed his closing argument.

We hold that the district court[1] neither abused its discretion in giving the consent instruction nor in refusing counsel's request for additional time to complete closing argument and therefore affirm the judgment of the district court.

## I. *Background*

Cobenais, an Indian, was charged with one count of aggravated sexual abuse against A.J., who lived on the Red Lake Indian Reservation. At trial, the government's theory of the case posited that when A.J. rebuffed Cobenais's demand for sex, "[h]e would not take no for an answer" and proceeded to backhand A.J., remove her clothes, and "shove[] his fingers into her vagina causing her injuries." Cobenais's theory of the case—as shown during his counsel's opening statement—asserted that "[t]he blood and the injuries in this case was the result of a *consensual* sexual encounter between [A.J.] and Dana Cobenais . . . . It wasn't the result of a rape. It wasn't the result of forced sex." (Emphasis added.) Cobenais's counsel argued that Cobenais "didn't force himself on [A.J.], and the bleeding was the result of this *consensual* sexual act." (Emphasis added.) Cobenais's counsel told the jury that Cobenais would describe the event "as a *consensual* sexual encounter which resulted in blood in this case." (Emphasis added.) Cobenais's counsel ended his opening statement by stating that "Cobenais did not rape [A.J.] and he didn't force himself on her. This happened as the result of two participants engaging in a *consensual* sexual act." (Emphasis added.)

## A. *Trial Testimony*

During trial, A.J. testified to the events of March 13–14, 2015. On March 13, A.J. went to the home of her uncle, Lester Lussier, and Cobenais was there. A.J. had seen Cobenais approximately four or five times before. Later that night, the three drove to Cobenais's grandmother's house in A.J.'s car so that Cobenais could visit his cousin. After arriving, Lussier left with someone else. Cobenais entered his grandmother's

---

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

house, while A.J. waited outside. Cobenais soon came back outside, and he and A.J. "sat around outside and . . . were drinking a little bit." According to A.J., she drank "a couple mixes," and remained there about 20 to 30 minutes.

At approximately 2:00 a.m., A.J. got into her car, and Cobenais followed—uninvited. A.J. asked Cobenais to get out of the car and told him that she wanted to go home. Cobenais refused. A.J. waited, but Cobenais still refused to get out of the car. A.J. testified that she "decided to drive off because [Cobenais] wasn't, like, trying to be touching [her] or doing anything." Cobenais told A.J. "that he was going to have somebody else pick him up" at an intersection, so A.J. stopped at the stop sign. A.J. became suspicious though, "because [Cobenais] didn't call anybody for a ride." A.J. again asked Cobenais to get out of her car, but he again refused.

At that point, A.J. testified, Cobenais assaulted her. She testified, "[Cobenais] slapped me and he pulled my pants down. And I told him to stop, but he wouldn't stop. . . . He put his hands inside me. . . . He was like slapping me [in the face] and he told me to shut up." A.J. defended herself "[b]y pushing him and kicking him." A.J. told him no and attempted to fight him off. She testified, "I didn't consent to any of it." A.J. could not recall much of what happened thereafter. She "remember[ed] coming to . . . in the passenger seat, and [Cobenais's] hands were up like (indicating) and [A.J.] was . . . really bleeding." Cobenais "had . . . blood all up his hands," and his hands had been "inside" of A.J. She was bleeding "[b]ecause [Cobenais] used his whole hand" "[t]o hurt [A.J.], to go inside [her]." A.J. testified that Cobenais injured her by forcibly putting his hand inside her vagina. A.J. did not know why Cobenais stopped the assault, but after he stopped, he got out of the car. A.J. then left to go home.

A.J. ran out of gas while driving home. Her car stopped in the middle of the road. She called 911 and reported that her car ran out of gas. A.J. explained that she did not tell the 911 operator about the sexual assault because she was scared. Red Lake Police Officer Rennel Parish responded to the scene. She testified that in addition to

-3-

her experience as a police officer, she has 16 years' experience as an emergency medical technician. After A.J. exited the car, Officer Parish noticed a sawed-off shotgun underneath the driver's seat. Officer Parish "grabbed the gun and . . . backed up." Officer Parish then noticed that A.J. was bleeding profusely. Officer Parish testified, "There was so much blood that was coming out of her and I didn't know where it was coming from." Officer Parish asked A.J. what happened and where the blood was coming from, and A.J. responded that she did not know. Officer Parish asked A.J. "if she had been shot because there was so much blood, just it was like turning on a faucet." Officer Parish then asked her whether she was on her period or having a miscarriage, and A.J. responded no. Finally, Officer Parish asked her again what happened, and A.J. told Officer Parish that she was raped. "She was very upset when she said that. The more questions [Officer Parish] asked her, the more upset she was getting." At first, A.J. said that her boyfriend raped her, but then she said it was someone else. She quit answering questions because she was upset. Officer Parish believed that A.J. went into shock.

A.J. told the officer that she wanted to go home, but Officer Parish instead called for an ambulance. Officer Parish followed the ambulance to Red Lake Hospital. A.J. was crying and "pretty upset." At one point, she passed out. She was distraught and hysterical. At the hospital, A.J. gave an account of the episode to Officer Parish involving "two men wearing dark clothing." Officer Parish testified that she did not believe this account. After that, A.J. stopped talking to Officer Parish.

The registered nurse who attended A.J. in the emergency room (ER) at Red Lake Hospital testified that A.J. was "bleeding heavily" when she saw her and that "[i]t was astonishing" to see "a patient in this condition." According to the nurse, A.J. "was bleeding. She was clotting. There w[ere] large clots, which was amazing to see. . . . [They were] around maybe 6, 7 centimeters or inches in diameter." The nurse had "never seen anything like this in [her] years of nursing." While in the ER, A.J. tried to get off the gurney to go home, but she collapsed. The nurse testified that A.J.

-4-

"was in shock. Confused, wanting to go home. Kept covering her face. Didn't want people to see her. Going in and out of crying. And then just talking words like we couldn't understand what she was saying. And then just being quiet again."

While at Red Lake Hospital, A.J. continued bleeding. She was so seriously injured that she was transferred to the Bemidji Hospital for "specialized care." Upon A.J.'s arrival to the Bemidji Hospital, she was seen by a Sexual Assault Nurse Examiner (SANE). The SANE testified that A.J. was "acutely injured," having a "laceration on the outside of her body and . . . bleeding acutely vaginally. She had large clots that were present." The SANE had never seen an injury like A.J.'s injury before. She "called the [ER] doctor in to come and see [A.J.] due to the extent of the injury." Thereafter, the ER doctor called in an obstetrician/gynecologist who had to surgically repair the vaginal lacerations.

Upon examination by Special Agent Jonathan Tjernagel of the Federal Bureau of Investigation (FBI), Cobenais admitted having sex with A.J. in the backseat of her car. According to Agent Tjernagel, Cobenais explained that he and A.J. had driven to his mother's house in A.J.'s car and sat outside of his mother's home in that car. Cobenais reported that after he and A.J. "hung out for a while" and drank alcohol, they then had sex. Cobenais told Agent Tjernagel "that while they were having sex [A.J.] began to start bleeding so he stopped. He said that she asked him why he had stopped and [Cobenais] told [Agent Tjernagel] it was because she was bleeding." Cobenais additionally told Agent Tjernagel that A.J. "asked him to continue having sex with her." Cobenais told Agent Tjernagel that he declined to continue.

Minnesota Bureau of Criminal Apprehension Investigator Philip Hodapp, who examined A.J.'s car, testified to finding blood on the driver's seat and on the front passenger's seat. Although he could not testify as to the amount of blood, he testified that a blood pattern appeared on the driver's seat and on the floor board of the driver's side. He also found a blood pattern on the front passenger's seat. He found no blood

on the backseat cushion. He found a droplet of blood in the center console in the backseat.

Cobenais also testified at trial. He testified that he and A.J. sat in her car outside of his mother's home "[f]or a number of hours" drinking, listening to music, and talking. He confirmed that they "started talking about having sex" and then drove to the "telephone building" to have sex, which is "on the way to [Cobenais's] grandmother's house." Cobenais testified that while at the telephone building,

> [w]e get in the back seat. She takes her off her pants and underwear. I take off my pants and underwear. And I start feeling her up. I got my fingers in there. Got my hand in there. We keep going for a while. I see some blood. I stop. She asked me why I stop. I told her. So she hops in the front seat, passenger. I jump in the driver's seat and I drive to my grandma's and we go inside. She goes in the basement. She said she's going to go to sleep. So I make something to eat. And then I think she might have come back up, went to the bathroom or something. When I sit on the couch she comes over and sits on the couch; and I end up going to sleep there and that's where I wake up.

Cobenais testified that upon awaking in the morning, A.J. was gone. He then discovered that his cell phone and $20 was missing.

Cobenais described the encounter as consensual. Specifically, he confirmed that he and A.J. "both took off [their] clothes together," "talked about [it] before it happened," and participated in the act. Cobenais admitted to putting his "whole fist" inside of A.J. without her "put[ting] up any fight." At no time did he "force [himself] into her vagina" or "use any force to get into her vagina." He confirmed that once A.J. started bleeding, he stopped. Cobenais testified that A.J. never told him that the insertion of his entire fist into her vagina hurt, despite her incurring three lacerations.

B. *Jury Instructions*

During the final charge conference, the court reviewed the proposed jury instructions with the parties. The parties ultimately agreed on the elements-of-the-offense instruction, which provided in pertinent part:

> The crime of aggravated sexual abuse has *four* essential elements, each of which the Government must prove beyond a reasonable doubt. The [first two of the] four essential elements are:
>
> *One*, the Defendant knowingly caused Jane Doe to engage in a sexual act;
>
> *Two*, the Defendant caused Jane Doe to engage in a sexual act by using force . . . .
>
> \*\*\*
>
> If *all* of these essential elements[2] have been proved beyond a reasonable doubt, you must find the Defendant guilty; otherwise you must find him not guilty.
>
> The term "sexual act," as used in essential elements *One* and *Two*, means the penetration, however slight, of the genital opening of another by hand or finger.
>
> The term "force," as used in essential element *Two*, means the use, or threatened use, of physical force sufficient to overcome, restrain, or injure a person.

---

[2]The parties stipulated that Cobenais is an Indian and that the alleged offense occurred "within the exterior boundaries of the Red Lake Indian Reservation, which is 'Indian Country.'" These stipulations established the third and fourth essential elements, making them immaterial to this appeal.

Cobenais did, however, object to the theory-of-defense instruction that the district court proposed sua sponte. The instruction provided:

> It is the Defendant's position that on the morning of March 14, 2015, he and Jane Doe had consensual sexual relations and that he did not use force against her to engage in sexual intercourse. There is no consent if the sexual act was accomplished against the will of Jane Doe by the use of force, coercion, or threats. Consent may be verbal or implied based on the facts, circumstances, and evidence presented to you.

Cobenais's counsel objected to the instruction as follows:

> *The first sentence is correct.* But the rest of it, I mean, you know, part of the problem here with this—it's not a problem—is that the elements in the statute—and I think that particularly if the Court gives the instruction tapered the way that I requested is what the law is. And we don't need to tell the jury what the law is, you know, isn't. And there isn't anything in the elements about what consent is or isn't.
>
> And this is going to get to be kind of a messy thing because of this precise issue I've tried to identify is that the issue is whether he caused her to engage in a sexual act by using force, not that force was used during the sexual act. And then we get this thing—you throw this thing about consent in here, which I don't even think is—I don't think it's appropriate in the case. I'm not even sure it's accurate. You're giving a definition of something that's not an element of the offense. I think it's unnecessary and confusing.

(Emphasis added.) The court took the matter under advisement. Cobenais's counsel characterized the theory-of-defense instruction as inaccurate, inappropriate, unnecessary, and not the law. The district court overruled the objection.

## C. *Closing Argument*

Immediately before the final charge conference, the court asked counsel how long they needed for their closing arguments. The trial had lasted one-and-a-half days. The government asked for 15 minutes for closing and five minutes for rebuttal. Cobenais's counsel asked for one hour for closing. The district court gave each party one hour and told counsel that the court intended to limit them to their requested time.

During closing argument, the government argued that Cobenais used force against A.J, stating:

> [N]ot only did [A.J.] testify that [Cobenais] used force against her by backhanding her, slapping her, she was trying to fight him off, and he continued and would not take no for an answer. But the injuries inside her vagina, those three lacerations that required a surgery to close, are evidence of force.

The government also argued that the nature of the act itself corroborated A.J.'s testimony that she did not willingly agree to Cobenais's aggression. The government argued that the extent of A.J.'s injuries and the nature of the sex act were factors for the jury to consider in determining whether Cobenais used force against A.J.

By contrast, defense counsel argued that while Cobenais did engage in a sexual act with A.J. "result[ing] in blood and injury," Cobenais did not "use force" against A.J. Defense counsel argued that A.J. "was a willing participant." Defense counsel asserted that A.J. was not telling the truth and that if the jury had "doubt about [whether] what [A.J. was] telling [the jury] is the truth and the whole truth in terms of how this all got started, if [the jury] ha[s] a doubt, it's a reasonable doubt, then the result is not guilty." Defense counsel then detailed his theory of the case in light of the evidence. Counsel painted A.J. as a liar, stating, "You have to rely on this liar as a person that you believe beyond a reasonable doubt in this case." After noting that Cobenais's testimony differed significantly from A.J.'s testimony, defense counsel

argued, "And if you can't decide, . . . if you're having a hard time making a decision about how the sex act all got started, that's a reasonable doubt."

Defense counsel then began repeating his earlier arguments. After a short time, the district court alerted defense counsel that he had three minutes left in his hour-long closing argument. Defense counsel then discussed, among other things, the presumption of innocence. The district court informed defense counsel that his hour had expired. Defense counsel asked for "a minute to wrap up." The district court gave defense counsel "30 seconds to wrap up." Defense counsel then discussed the presumption of innocence and proof beyond a reasonable doubt. The district court then informed defense counsel to "bring it to a close." Defense counsel then made the following summation:

> The evidence in this case, the Government did not prove its case beyond a reasonable doubt. Mr. Cobenais told you the truth. He's not guilty of this offense. And I'm going to sit down and I trust that you—Mr. Wardlaw is going to, you know, have some responses. I would have responses but I don't get the last word. I'm asking you to do the right thing in this case and the right thing with this evidence before you is to return a verdict of not guilty because the proof isn't there and Mr. Cobenais told you the truth.

The court then stated, "Mr. Olson. I have warned you about three times now. Bring it to a close." Defense counsel concluded, "I would ask that you return a verdict of not guilty. Thank you."

During its charge to the jury, the district court instructed the jury on both the presumption of innocence and the requirement that the government prove its case beyond a reasonable doubt. The jury returned a guilty verdict.

-10-

## II. *Discussion*

On appeal, Cobenais argues that the theory-of-defense jury instruction on consent inaccurately stated the elements of the offense and the defense theory of the case. He also argues that the district court improperly curtailed his closing argument.

### A. *Theory-of-Defense Instruction on Consent*

Cobenais argues that the district court erred by sua sponte giving the jury an inaccurate, confusing, and misleading theory-of-defense instruction on consent—a term not found anywhere in 18 U.S.C. § 2241(a)(1), the aggravated sexual abuse statute. Cobenais argues that the instruction permitted the jury to convict him if it found that A.J. did not agree to be injured *during the course of* the sexual act. Cobenais maintains that the consent instruction effectively "told the jury . . . there can be 'no consent' when injurious force is used during the course of the sex act; since force was equated with injury, there could be no consent if injury occurred." As a result, Cobenais asserts, "consent was not possible in this case even if [the jury] found [that he] and A[.]J[.] had engaged in mutually voluntary sexual activity up to the point of the noncoital injurious sex act." Because Cobenais "testified that the sex act did occur and caused A[.]J[.]'s injuries," Cobenais argues that the jury "was permitted, if not required, to conclude then there was no way to negate the essential elements of knowingly engaging in sexual activity by use of force." In summary, Cobenais contends that the "instruction misstated the elements of the offense, misstated the defendant's theory of defense, deprived Mr. Cobenais of a fair trial, and [this] requires reversal for a new trial."

"Generally, when evaluating jury instructions, we review for abuse of discretion." *United States v. Gill*, 513 F.3d 836, 849 (8th Cir. 2008). We review the district court's "interpretation of the law de novo." *United States v. Thetford*, 806 F.3d 442, 446 (8th Cir. 2015), *cert. denied*, 137 S. Ct. 187 (2016). "In conducting such review, this court must determine whether the instructions, taken as a whole and viewed in light of the evidence and applicable law, fairly and adequately submitted the

issues in the case to the jury." *United States v. Janis*, 810 F.3d 595, 598 (8th Cir. 2016) (quoting *United States v. Beckman*, 222 F.3d 512, 520 (8th Cir. 2000)).

Cobenais was convicted of violating 18 U.S.C. § 2241(a)(1), which provides that "[w]hoever. . . knowingly causes another person to engage in a sexual act . . . by using force against that other person . . . or attempts to do so, shall be fined under this title, imprisoned for any term of years or life, or both." "The elements of aggravated sexual abuse are (1) the defendant did knowingly cause and attempt to cause another to engage in a sexual act, (2) by the use of force or threat of force, (3) the defendant is an Indian, and (4) the offense occurred in Indian Country." *United States v. Youngman*, 481 F.3d 1015, 1020 (8th Cir. 2007).

Cobenais does not argue that the district court improperly instructed the jury on the essential elements of the offense. Instead, Cobenais argues that the district court erred by sua sponte giving the following theory-of-defense instruction on consent:

> It is the Defendant's position that on the morning of March 14, 2015, he and Jane Doe had consensual sexual relations and that he did not use force against her to engage in sexual intercourse. *There is no consent if the sexual act was accomplished against the will of Jane Doe by the use of force, coercion, or threats*. Consent may be verbal or implied based on the facts, circumstances, and evidence presented to you.

(Emphasis added.) Below, Cobenais conceded that "[t]he first sentence is correct."[3] Cobenais took issue only with the remainder of the instruction—whether

---

[3]While counsel argued at oral argument that he "inappropriately said the first sentence is okay," we hold counsel to his concession. *Cf. Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 763–64 (8th Cir. 2010) ("In light of SensoryEffects' concession before the district court on this point, we need not consider its arguments on appeal challenging the strength of Sensient Flavors' name."). We note that counsel's concession is in line with Cobenais's theory of the

"consent [exists] if the sexual act was accomplished against the will of Jane Doe by the use of force, coercion, or threats." We will therefore focus on the second sentence of the theory-of-defense instruction.

First, Cobenais maintains that the instruction was improper because consent is not an element of the offense. It is true that "the language of section 2241(a)(1) . . . does not include lack of consent as an element of the offense." *United States v. Matthews*, 1996 WL 457413, at *2, 95 F.3d 50, 50 (5th Cir. July 15, 1996) (per curiam) (unpublished table decision). But the legislative history of § 2241(a)(1) shows that Congress chose to remove lack of consent as an element because it wanted to eliminate the doctrine of "resistance"; elimination of this doctrine was for the benefit of the victim, not the perpetrator. *See* H.R. Rep. No. 99-594 at 10–11 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 6186, 6190–91 ("H.R. 4745 modernize[d] and reform[ed] Federal rape provisions by . . . abandoning the doctrine[] of resistance . . . ."). In summary, the government is not required "to show that the victim did not consent to the sexual act" or that "the victim resisted" to prove a violation of § 2241. *Id*. at 13.

But Congress's elimination of the traditional rape law doctrine of consent does not mean that consent is irrelevant. "[A]ctual consent is relevant [in a trial under § 2241] to the extent it negates the required causation." *United States v. Martin*, 528 F.3d 746, 753 (10th Cir. 2008).[4] Section 2241(a)(1)'s "manifest purpose . . . is to

case, as evidenced by his counsel's opening statement (calling the sexual act or encounter "consensual" at least four times); Cobenais's own testimony describing the sexual act as consensual; and his counsel's closing argument (calling A.J. a "willing participant").

[4]In *Martin*, the defendant argued that a jury instruction setting forth the elements of the offense "misstate[d] the law because [it] d[id] not make clear that the statute applies only to non-consensual sex." 528 F.3d at 752. The court acknowledged that "the instructions do not use the word 'consent,'" yet it was undisputed that "the

-13-

criminalize sexual acts engaged in with a person whose will is not actually engaged but is overcome by violence." *Norquay*, 987 F.2d at 478. We have recognized that "[i]t will . . . be a rare case indeed where the defense of reasonable mistake will be available, *since the need to employ force will necessarily indicate, as a general matter, a lack of consent.*" *Id.* (emphasis added) (holding reasonable mistake is an affirmative defense requiring defendant to introduce some evidence of a reasonable basis for having made a mistake).

Cobenais's defense is predicated on A.J.'s alleged consent. He argues that she agreed to have sex with him and that her injuries were not caused maliciously but as the unintended consequence of the vigorous sexual activity that they pursued together. "Force *is an element* of the offense of aggravated sexual abuse. The requisite force is established 'if the defendant overcomes, restrains, or injures the victim or if the defendant uses a threat of harm sufficient to coerce or compel submission.'" *United States v. Gabe*, 237 F.3d 954, 961 (8th Cir. 2001) (citation omitted) (quoting *United States v. Eagle*, 133 F.3d 608, 610 (8th Cir. 1998)) (holding sufficient evidence existed for a reasonable jury to conclude beyond a reasonable doubt that defendant used force to accomplish sexual abuse when victim "testified that [defendant] forced her to have sexual intercourse without her consent"). A.J.'s injuries, together with her testimony about the perpetrator's conduct, suffice to prove that Cobenais used sufficient force to violate § 2241(a)(1). In summary, although consent is not an element, consent is certainly relevant as its presence would negate the causal element under § 2241(a)(1), and the need to employ force will necessarily indicate a lack of consent.

---

statute could [not] be applied to violent sex acts that are nonetheless consensual between the parties." *Id.* (citing *United States v. Norquay*, 987 F.2d 475, 478 (8th Cir. 1993), *partially abrogated on other grounds*, *United States v. Thomas*, 20 F.3d 817, 823 (8th Cir. 1994) (en banc). "Nonetheless," the court held that "the instructions taken as a whole correctly convey that the sex must be nonconsensual." *Id.* The court explained, "By requiring the government to prove that threat or force *caused* the sexual act, the instructions correctly stated the law under § 2241(a)." *Id.* at 753.

Second, Cobenais argues that the second sentence of the district court's instruction improperly led the jury to find that no consent exists if Cobenais accomplished an otherwise consensual act by force; that is, if both parties wanted to engage in the inherently forceful act of "fisting." We reject Cobenais's reading of the instruction. According to the instruction, a lack of consent exists "if the *sexual act* was *accomplished* against" the victim's will "by the use of force, coercion, or threats." (Emphases added.) But the theory-of-defense instruction must be read in conjunction with the elements-of-the-offense instruction. *Cf. Janis*, 810 F.3d at 598. "[S]exual act" is defined in the elements-of-the-offense instruction as "the penetration, however slight, of the genital opening of another by hand or finger." Thus, properly read, the second sentence of the theory-of-defense instruction provides that there is no consent if the *penetration* of A.J.'s genital opening by Cobenais's hand or finger was *accomplished* against A.J.'s will by Cobenais's use of force, coercion, or threats. The sexual act is therefore "accomplished" once the definition of sexual act is satisfied.

Furthermore, the instruction provides that the sexual act must be accomplished "against the will" of the victim; this means that the victim did not want to engage in the act. "[F]orce, coercion, or threats" modifies "against the will" of the victim. The particular force used therefore lacks the victim's consent. The second sentence of the theory-of-defense instruction is consistent with the essential-elements instruction, which advises the jury that it had to find that Cobenais "caused [A.J.] *to engage* in a sexual act *by using force*." (Emphases added.)

Finally, although Cobenais never requested a theory-of-defense instruction on consent, the record demonstrates that consent formed the basis of his defense. In his counsel's opening statement, counsel for Cobenais called the sexual act or encounter between A.J. and Cobenais "consensual" four times. In his own testimony, Cobenais described the sexual act as consensual. And in closing argument, Cobenais's counsel referred to A.J. as a "willing participant."

Because the instructions taken as a whole in this case clearly and adequately explained the applicable law to the jury, we hold that the district court did not abuse its discretion in providing the theory-of-defense instruction on consent.

## B. *Closing Argument*

Cobenais also argues that the district court abused its discretion in refusing his counsel's reasonable request for additional time to complete closing argument, thus depriving the jury of his full explanation of the presumption of innocence and proof beyond a reasonable doubt.

"The limitation of time for arguments of counsel is within the sound discretion of the trial judge." *United States v. Bednar*, 728 F.2d 1043, 1049 (8th Cir. 1984). A district court has "discretion in setting the time for closing argument based on its assessment of the complexity of issues and evidence involved." *United States v. Alaniz*, 148 F.3d 929, 935 (8th Cir. 1998). "A reversal may be required where counsel is restricted within unreasonable bounds so that he is unable to fully and fairly present his case." *Batsell v. United States*, 403 F.2d 395, 401 (8th Cir. 1968) (quoting *Butler v. United States*, 317 F.2d 249, 257 (8th Cir. 1963)). We have previously held that a district court's "limiting of counsel to one hour of argument on each side was not . . . an abuse of discretion." *Id.*

Here, we conclude that the district court did not abuse its discretion in holding Cobenais's counsel to the amount of time that he told the court he needed for closing argument—one hour. *See id.* ("Here, the limiting of counsel to one hour of argument on each side was not, in our opinion, an abuse of discretion. In granting additional time thereafter, the court exercised substantial liberality with defense counsel . . . ."). The district court advised counsel that it would hold him to that limit. The court did exactly what it told defense counsel it would do—enforce the time limit. But the district court even showed leniency by permitting defense counsel to go beyond that hour for the purpose of concluding his closing argument. Furthermore, the record shows that before

being urged to wrap up his closing argument, defense counsel had already discussed the reasonable-doubt standard throughout his closing and had tied it to specific trial evidence and issues. And, after the district court permitted counsel to wrap up his closing, defense counsel discussed the presumption of innocence. After the district court again informed defense counsel that his time was up and that he had 30 seconds to conclude his argument, defense counsel reiterated the presumption of innocence and reasonable-doubt standard. Finally, the total amount of time afforded to Cobenais's counsel was reasonable for a day-and-a-half trial.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

KELLY, Circuit Judge, dissenting.

Because I believe that it was error for the district court to give a theory-of-defense instruction on consent, I respectfully dissent.

The district court sua sponte, and over the strenuous objection of the defense, drafted and gave the following instruction to the jury:

> It is the Defendant's position that on the morning of March 14, 2015, he and Jane Doe had consensual sexual relations and that he did not use force against her to engage in sexual intercourse. There is no consent if the sexual act was accomplished against the will of Jane Doe by the use of force, coercion, or threats. Consent may be verbal or implied based on the facts, circumstances, and evidence presented to you.

The court concedes that consent is not an element of the charge of aggravated sexual abuse under 18 U.S.C. § 2241(a)(1). See United States v. Rivera, 43 F.3d 1291, 1298 (9th Cir. 1995). A defendant cannot "be convicted simply on a finding of

-17-

non-consensual sexual activity." United States v. Jones, 104 F.3d 193, 197–98 (8th Cir. 1997). Rather, the defendant must cause the victim to engage in the sex act by using force. Id. at 198. For the same reason, consent is not necessarily a total defense to the charge. See Rivera, 43 F.3d at 1297–98. The most that can be said is that "consent is relevant to the extent it negates the required causation." Martin, 528 F.3d at 753. But the jury instruction never explained the narrow relationship of consent to the elements of the charge. Without such an explanation, there is a substantial risk that the jury rested its verdict on an improper finding that A.J. did not consent. I believe it was error for the district court to instruct on the concept of consent without explaining how "consent related to the elements the jury was required to find." Id. (rejecting defendant's proposed consent instruction because it "does not correctly describe the role of consent in a trial under 18 U.S.C. § 2241").

Properly defining consent was crucial in this case because Cobenais' defense was that he did not use force to coerce or compel sex; instead, the force used was inherent in the consensual sexual act. Only the former is sufficient to convict under § 2241(a)(1). See United States v. Fire Thunder, 908 F.2d 272, 274 (8th Cir. 1990) ("The force requirement of section 2241(a)(1) is met when the 'sexual contact resulted from a restraint upon the other person that was sufficient that the other person could not escape the sexual contact." (quotation omitted)).

The first sentence of the instruction confuses Cobenais' theory. It states that "[i]t is the Defendant's position that" Cobenais "did not use force against [A.J.] to engage in sexual intercourse." The instructions elsewhere defined "force," in part, as "the use . . . of physical force sufficient to . . . injure a person." Read together, these instructions misrepresent Cobenais' position, and he properly objected.[5]    In

_____

[5]The court concludes that Cobenais conceded that the first sentence of the instruction was correct. After defense counsel's initial objections, which are quoted in the court's opinion, the district court took the instructions under advisement. At a follow up conference later that day—which the court does not quote from—the district

-18-

contradiction with the instruction, and in support of his defense that the force itself was consensual, Cobenais testified that he used physical force that injured A.J. while the two engaged in a sexual act. Yet, the jury was told that Cobenais' position was contrary to his own testimony. By setting out a theory that defendant did not request and asserting that the defendant supported it despite his objection and contrary testimony, I believe the instruction misled the jury. See United States v. White, 863 F.3d 784, 790 (8th Cir. 2017) (en banc) ("We will reverse if the instructions contained errors that misled the jury or had a probable effect on the jury's verdict." (internal quotation omitted)); see also Quercia v. United States, 289 U.S. 466, 470 (1933) (trial court's "deductions and theories not warranted by the evidence should be studiously avoided" (internal quotation omitted)).

The second sentence of the consent instruction is equally, if not more, problematic. Instead of giving the jury a definition of consent, the second sentence is framed in the negative, describing what would constitute a lack of consent. Again reading in the definition of force, it states: "There is no consent if the sexual act was accomplished against the will of [A.J.] by the use of [physical force sufficient to injure], coercion, or threats."[6] The court focuses on the inclusion of the phrase

---

court asked for objections as to each instruction. At that time, defense counsel made clear that he objected to the instruction in its entirety, stating: "I don't think it's necessary. I don't think it's the law. I don't think it's accurate. I don't think it's appropriate."

[6]The second sentence includes a misstatement of the law. Without narrowing definitions, neither bare coercion nor simple threats are sufficient to warrant a conviction under § 2241(a)(1). See Jones, 104 F.3d at 198 (holding that "the inclusion of threats as a basis for conviction was error" in a jury instruction that was, in relevant part, identical to the second sentence here); Fire Thunder, 908 F.2d at 274 ("Section 2241(a)(1) envisions actual force."). By including these erroneous elements, the instruction inserted "a false issue of magnitude sufficient to nullify proper consideration of the issues" by the jury, and "a conviction so based cannot stand." Michaud v. United States, 350 F.2d 131, 134 (10th Cir. 1965).

"accomplished against the will." I agree that this language touches on the central relationship between force and causation, but it fails to provide any meaningful guidance to the jury.

This sentence—and the court—incorrectly suggest that there is no consent, *i.e.*, that Cobenais' purported defense fails, if the sexual act was accomplished by the use of physical force and resulted in unwanted injury. But § 2241(a)(1) does not criminalize those who willingly engage in forceful, or even violent, sexual activity with other willing adults, even if that activity results in injury. Rather, the defendant must "knowingly cause[] another person to engage in a sexual act . . . by using force against that other person," 18 U.S.C. § 2241(a)(1), such that the "other person could not escape the sexual contact," Fire Thunder, 908 F.2d at 274 (quotation omitted). The court asserts that the second sentence is saved by the inclusion of the phrase "against the will," which it asserts is modified by the term "force." But the court omits the instructions' definition of force, which includes "physical force . . . sufficient to injure a person." If the jury found only that the *injury* resulting from the sexual act was "against [A.J.'s] will"—a reasonable conclusion, to be sure—such a finding is insufficient to convict Cobenais for aggravated sexual abuse. Because the second sentence of the jury instruction misstates the law and fails to explain the crucial relationship of consent, force, and causation, I believe it was error to provide it to the jury. See J. C. Carlile Corp. v. Farmers Liquid Fertilizer, Inc., 346 F.2d 91, 94 (8th Cir. 1965) ("[A]n instruction which ignores a material issue in a case about which the evidence is conflicting and allows the jury to find a verdict without considering that issue, is misleading and prejudicial even though another instruction which correctly presents that issue is contained in other parts of the charge.").

Finally, although the government never raised harmless error, I conclude the erroneous jury instruction was prejudicial to Cobenais, warranting a new trial. This is not a case that presented overwhelming evidence of Cobenais' guilt: A.J. told numerous versions of the events of that night that were contradicted by Cobenais. By

-20-

focusing the jury on consent, the district court's instruction distracted the jury from the elements of the charge and Cobenais' actual defense. See United States v. Fykes, 678 F. App'x 677, 686 (10th Cir. 2017) (prejudice can be found "when an erroneous instruction allowed the jury to improperly circumvent the defendant's trial theory"). The government exploited the misconceptions created by the consent instruction by stating several times during closing—over Cobenais' objection—that the use of physical force during the sexual act meant the act was non-consensual and thus Cobenais was guilty. T. Tr. 271 ("The issue here in this case boils down to this one element. Was physical force used to perform the sexual act."); id. at 275 ("[N]obody is going to consent to having a fist shoved up their vagina and it rips them inside. That's what this case is about."). The risk that the jury accepted the government's interpretation of the consent instruction is simply too significant to overlook in this case. See United States v. Simpson, 845 F.3d 1039, 1061–62 (10th Cir. 2017) (finding a likelihood of prejudice when the prosecutor invited the jury to consider the evidence in a way that likely caused the jury to rely on the error in the jury instructions). Because the erroneous instruction was prejudicial, I would reverse and remand for a new trial.

_____